Burns *v.* Gartzman et ux., Appellants.

Argued October 10, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Walter B. Gibbons,* with him *Harry Feinstein,* for appellants.

*Rowland C. Evans, Jr.,* with him *Krusen, Evans & Shaw,* and *Dwight V. Dowley,* for appellee.

OPINION BY CUNNINGHAM, J., March 2, 1940:

In November, 1937, Anna Gartzman was the owner of the property at No. 4747 North 11th Street, Philadelphia, where she lived with her husband, David Gartzman, and several children. In a part of the property a baking business was carried on by White Palace Baking Company, a close corporation having 50 shares of capital stock, 48 of which were owned by Anna Gartzman, one by her husband, and another by a son. The action below was assumpsit by Martin C. Burns, a real estate broker licensed for the State of New York, to recover commissions which he claimed he had earned under a contract of employment made with David Gartzman, acting for himself and as agent for Anna, to procure a purchaser for the bakery business and the real estate, or a purchaser for the bakery who would lease the real estate for a term of not less than fifteen years. His commissions were to be 5% of the price obtained for the stock, fixtures, good will, etc., of the business and at the rates fixed by the Philadelphia Real Estate Board for the sale or leasing, as the case might be, of the real estate.

The plaintiff endeavored to show that pursuant to this employment he had procured Samuel Verp and his brother, Louis Verp, of New York City, as purchasers of the baking business and lessees of the property who were ready, able and willing to buy the business and lease the premises on terms offered by the defendants, but defendants refused to go through with the transaction negotiated for them by him. The defense interposed was threefold: First, that plaintiff could not recover because he was claiming compensation for the rendition of services which, at the time they were rendered, he was not licensed to engage in under the laws of the State of Pennsylvania; second, the written accept-

ance tendered by the proposed purchasers and lessees was not in full accord with the terms and conditions offered by the defendants; and third, Anna Gartzman was not a party to the contract upon which the plaintiff declared. The commissions claimed amounted to $1857, with interest; if plaintiff is entitled to recover, the amount of his claim is not in dispute. The case was tried without a jury and a finding made in favor of the plaintiff in the sum of $1996.27; the present appeal is by the defendants from the judgment entered thereon.

It was admitted by plaintiff that he had not obtained any real estate broker's license from the Department of Public Instruction for the State of Pennsylvania until March 1, 1938.

Upon the first branch of the defense the court below made findings to the effect that the "transaction which is the subject of this suit was an isolated one," and that plaintiff's failure to obtain a license until March 1, 1938, did not, under the facts here present, prevent recovery in this action.

There are no conflicts in the evidence upon this feature of the case, if we assume, as we shall for present purposes, that Anna Gartzman was a party to the arrangement for the employment of the plaintiff. The question now involved is, therefore, whether the court below properly applied the law to the uncontroverted facts appearing from the evidence.

It is to be observed that material changes were made in the statutory and decisional law of the Commonwealth by legislation adopted in 1929 and amended in 1937. The prior Act of May 7, 1907, P. L. 175, was a revenue act imposing a license tax upon all brokers, including "real estate brokers and agents" to be assessed by mercantile appraisers upon gross receipts and earnings—the tax to be collected by the county treasurer, etc. The definition applicable to real estate brokers and agents reads: "Real estate brokers and agents are those who buy, sell, or rent real estate, or collect rent

therefrom, or negotiate loans upon real estate security, for a commission or other compensation." This act was superseded (*Newhouse v. Dipner,* 118 Pa. Superior Ct. 101, 180 A. 88,) by the Act of May 1, 1929, P. L. 1216. The applicable provisions are found in Sections 2, 12 and 16 and their amendments. The act is entitled "An Act to define real estate brokers and real estate salesmen; and providing for the licensing, regulation, and supervision of resident and nonresident real estate brokers and real estate salesman and their business." By Section 12, 63 PS §442, it is made a misdemeanor for anyone to engage in, or carry on the business or act in the capacity of a real estate broker within this Commonwealth, without first obtaining a license from the Department of Public Instruction. By Section 2(a), 63 PS §432, it is enacted that the term "real estate broker" shall include "all persons,......who, for another and for a......commission,......shall...... negotiate the sale, exchange, purchase or rental,...... of any real estate,......the property of another, whether the same shall be located within the State of Pennsylvania, or elsewhere,....... One act in consideration of compensation, by fee, commission or otherwise, of buying, selling, renting or exchanging any such real estate of or for another,......shall constitute prima facie evidence that the person,......so acting......is a real estate broker within the meaning of this act."

The provision last quoted was apparently overlooked by the court below when it held that the prohibition against acting as a real estate broker without having obtained a license did not apply to "an isolated transaction." See also *Verona v. Schenley Farms Co.,* 312 Pa. 57, (at page 66), 167 A. 317. Another applicable provision is found in Section 16, 63 PS §446, which reads: "No action or suit shall be instituted, nor recovery therein be had, in any court of this Commonwealth by any person,......for compensation for any act done or service rendered, the doing or rendering of

which is prohibited under the provisions of this act to others than licensed real estate brokers, unless such person,......was duly licensed hereunder as real estate broker *at the time of the doing of such act or the rendering* of such service." (Italics supplied.)

The statutory provision that no person can recover a commission unless he was duly licensed at the time he rendered the services for which he claims compensation is merely declaratory of the principle established by our appellate decisions prior to the approval of the Act of 1929. In *Lessy et al. v. Fletcher,* 89 Pa. Superior Ct. 521, we reversed a judgment in favor of the plaintiffs (who were claiming a commission alleged to have been earned on a sale of real estate) upon the ground that they were not licensed brokers at the time the commission was earned. They had been licensed for the year 1923 but did not pay the tax or receive a license under the Act of 1907 for 1924 until May 16th of that year. One of the agreed upon facts in that case was that the offer of the owner of the real estate to sell for a designated sum was accepted on January 10, 1924, and the deed delivered on June 8th of that year. We there said, "The correct test is whether the plaintiffs were licensed at the date upon which they earned their share of the commission by performing the service for which they were employed, i. e., bringing the parties together and consummating the agreement for the sale." Among other cases cited in that opinion is *Sherman v. Welsh et al.,* 87 Pa. Superior Ct. 282, in which it appeared that the plaintiff seeking to recover a commission produced a license "which showed on its face it had not been issued until over a month after the rendering of the services sued for and the consummation of the contract of purchase." We said that the claim, as presented, rested upon an illegal foundation and that the defendants were entitled to take advantage of it. We find nothing in any of the cases cited in behalf of the present plaintiff which modifies these principles. In

*Newhouse v. Dipner,* supra, [118 Pa. Superior Ct. 101, 180 A. 88] the plaintiff had a license under the Act of 1929 when the commission was earned but had not paid a tax under the Act of 1907 for that year. What was decided by this court was that the Act of 1907 had been superseded by the Act of 1929, "so far as compelling the payment of the tax [imposed by it], in addition to the payment for a license under the Act of 1929 as a prerequisite to doing business, is concerned."

The broker in *Lennox v. Waters et al.,* 93 Pa. Superior Ct. 178, had his license four months prior to the time he rendered the services for which he sought compensation. The opinion in *Bentley v. Gilmore,* 285 Pa. 199, 131 A. 700, was upon a different question, but contains the remark that the Act of 1907 is complied with if the license is obtained before the actual services are performed.

Manifestly, each case must be decided upon its own facts, and we therefore turn to plaintiff's testimony.

The business relations between the parties began in November, 1937. Plaintiff testified he called on that date at the home and place of business of the defendants with two prospective buyers of a bakery business—Shereshefsky and Bloom and another New York real estate broker "who was friendly to those buyers." Both defendants and their son were present. The defendants said they were willing to sell their bakery as they wanted to retire from business. Plaintiff testified the defendants asked him what commission he would receive if he made a sale, to which he replied, "I usually get five percent on the sale of the good-will and chattels, the business......but here in Philadelphia I am willing to abide by the Philadelphia Real Estate Board rules on the lease, or if we should sell the property, on the property," and that the defendants agreed to those rates. After a discussion of the extent of defendants' business plaintiff "jotted down" on one of his "regular listing forms" the information received from them. The buyers

present at that interview concluded they were not interested in the proposition and nothing resulted from the discussion. In the early part of 1938 plaintiff approached the Verp brothers about buying the defendants' business and brought them to Philadelphia on February 1, 1938, "to look over this bakery." Anna Gartzman was in Miami at that time and the proposition was discussed with David Gartzman and his son. After an inspection, negotiations were opened. Gartzman said "he wanted $15,000 for the bakery, $8,000 cash," and would lease the real estate for fifteen years at a rental of $300 per month. No agreement was reached at that time; plaintiff and the Verps returned to New York. On February 7th plaintiff was called from New York to Philadelphia and met the Verp brothers and a Mr. Alpert, a friend of theirs, at the Gartzman property. Negotiations were resumed and the Verp brothers offered $12,000 as against Gartzman's price of $15,000. The parties finally compromised on $13,500, "to cover the sale of the good-will, the chattels, the business, the bakery routes, etc.," $8,000 of which was to be paid in cash. Several sheets of paper were produced and plaintiff made a memorandum of the result of the negotiations. He produced this paper at the trial and said, "I just worded it in short, so that when we get to the lawyer, the lawyer could copy from that and elaborate on it as necessary. Those were the terms we agreed on." For present purposes it is sufficient to say the memorandum was dated February 7, 1938, and contained notations to the effect that the price to be paid for the business was $13,500—cash $8,000—the purchasers to be given a lease of the real estate for a term of fifteen years. Verp brothers offered to pay a rental of $250 per month for the first five years; $275 for the next five, and $300 for the remainder of the term. Gartzman insisted on $275 per month for the first five years instead of the $250 offered by the purchasers. Plaintiff testified he and his clients told Gartzman they would not quibble

over that difference. An excerpt from plaintiff's testimony relative to the circumstances under which the parties separated reads: "Q. Then what happened next, after that was all done? A. After that was all done, Mr. Gartzman's son shook hands with the Verp brothers, with Mr. Alpert, and with me, and they told us, 'It is a deal, the deal is consummated. There is only one thing you got to put in, and that's that twenty-five dollar raise.' I said to him, 'I guess we will get together on that.' He said, 'Now, you can go back to New York, and I'll be in New York on Wednesday, February 9th. I'll be at the Verp brothers' home, and we will make the deal in New York.' " By the phrase, "make the deal," was obviously meant, have the necessary papers prepared and executed.

It would be extremely difficult to escape the conclusion that, if plaintiff earned a broker's commission in this case, it was fully earned as of February 7, 1938. On that date the agreement for the sale of the bakery and the renting of the real estate was consummated—subject, of course, to any modifications in its terms to which the parties might subsequently mutually agree. At least, it is perfectly clear that plaintiff had by that time, and within the meaning of the Act of 1929, "negotiated" the "rental" of the real estate of the defendants for a "commission." By the express provisions of Sections 12 and 16 of the statute, "the doing or rendering" of such services "without first obtaining a license from the Department of Public Instruction" amounted to an illegal act. In Section 16 it is declared that "no action or suit shall be instituted, nor recovery therein be had, in any court of this Commonwealth" for compensation for services of this character unless the person seeking to recover "was duly licensed [under the statute] as [a] real estate broker at the time of the doing of such act or the rendering of such service."

Another indication that plaintiff and his purchasers considered the transaction completed on February 7th,

with the exception of the preparation and execution of a formal bill of sale and the necessary lease, is to be found in the fact, as testified to by plaintiff, that at the close of the negotiations on that date the Verps offered Gartzman a check for $2,000 as a "deposit on account of purchase."

It is true there were further negotiations between the parties and a mutual modification of the original agreement. Gartzman did not go to New York on February 9th. When he did not keep the appointment, plaintiff called him on the telephone and was informed by Gartzman that after talking the matter over with his daughter and son they had concluded that the amount of cash, as fixed on February 7th, should be increased and that he (Gartzman) had written plaintiff a letter on February 8th explaining the modification he desired. The changes proposed by Gartzman in his letter of February 8th were that the cash payment of $8,000 be increased to $12,000 with the balance to be paid in one year from the date of sale, and that the monthly rental be $275 for the first five, and $300 for the remaining ten, years. These modifications were agreed to by the Verps and Burns who testified that they came back to Philadelphia on February 21st. By that time Mrs. Gartzman had returned from Miami. Plaintiff testified that, at a conference with both defendants, Gartzman explained to his wife the original proposition and the modifications to which the purchasers had agreed; and that Anna Gartzman expressed her approval of the terms of sale and of the rentals in the proposed lease. He continued: "So the Verp brothers got themselves a certified check for $2,000, and we were all set to come back" for the execution of the formal papers. Soon thereafter it became apparent that Gartzman, having been advised that it would be necessary to dissolve the corporation and that payment of a considerable amount in taxes would be required, had concluded he would not go through with the transaction.

On March 1, 1938, the Verp brothers and plaintiff handed Gartzman a letter which purported to be a formal acceptance of the terms of the sale and the rental provisions of the lease, as originally agreed upon February 7th and modified by Gartzman's letter of February 8th, accompanied by a tender of a certified check in the amount of $2,000, dated February 21, 1938. The final paragraph of the letter read: "It is understood that this transaction is made through M. C. Burns, licensed broker, and that his commission, as previously agreed, is to be paid by you." It is significant that this letter was dated and delivered the day Burns received his Pennsylvania license. With relation to this branch of the defense, the letter amounted to nothing more than a written confirmation of the oral acceptance of Gartzman's modified terms which had been made, according to Burns' testimony, on February 21st. No new negotiations were conducted on March 1st; all of plaintiff's services in bringing the parties together and consummating the deal had been rendered prior to that date.

It has been firmly established that the securing of a license is a condition precedent to the lawful transaction of business by a real estate broker and that he cannot have the aid of the courts to recover commissions which were earned before he received a license. "Subsequent compliance with the law will not cure the illegality of previous transactions": *Gonnelli, Jr., v. Magazzu,* 97 Pa. Superior Ct. 595; *Luce v. Cook,* 227 Pa. 224, 75 A. 1098; *Meyer v. Wiest,* 250 Pa. 573, 95 A. 715; *Sherman v. Welsh et al.,* supra, and *Lessy et al. v. Fletcher,* supra. Moreover, plaintiff made these admissions upon cross-examination: "Q. As a matter of fact, you have sold numerous bakeries out of New York? A. Yes, sir. Q. Several of them in Pennsylvania? A. No, sir; this is the first time. Q. But you have negotiated a great deal in Pennsylvania? A. But I never succeeded. Q. You never succeeded? A. Until this one. Q. But

the Gartzmans were not the first matter you had in Pennsylvania? A. No, sir."

In our opinion, plaintiff's own testimony demonstrated that his claim, as presented, rested upon an illegal foundation and he is therefore precluded by the 16th section of the Act of 1929 from recovering any compensation from the defendants for the services rendered them.

This conclusion renders it unnecessary for us to consider the additional defenses relied upon by the defendants and we express no opinion upon them. The third assignment of error, and so much of the fifth as is based upon the affirmance of plaintiff's ninth and tenth requests for findings of fact and his first and second requests for conclusions of law, are sustained.

Judgment reversed and here entered for appellants.