## Murphy v. Wellbrock

250

*Frank J. McDonnell* and *Welles, Mumford & Mc-Grath,* for plaintiff.

*James G. McDonough* and *J. Frank Connolly,* for defendant.

McCready, P. J., fifty-sixth judicial district, specially presiding, November 21, 1945.—Plaintiff, Ward R. Murphy, brought an action in assumpsit against defendant, Suzanne or Sue Wellbrock, to recover the sum of $2,275, with interest from October 20, 1944, said sum being claimed as commission for negotiating the sale of real estate.

The jury awarded plaintiff a verdict of $2,275, plus the sum of $59.94, interest from October 20, 1944.

Defendant moved for judgment n. o. v. and for a new trial, and the matter is now before the court for disposition.

In support of her motion, defendant advances the following reasons:

"1. The verdict was against the law in that the oral contract for real estate brokerage services and commissions between plaintiff and defendant as testified to by plaintiff was established by his evidence as having been entered into, if at all, between the parties on March 19, 1944; at this time plaintiff was not a licensed real estate broker of the Commonwealth of Pennsylvania and to permit his recovery in this case would be contrary to the provisions of the Real Estate Brokers Act of 1929, P. L. 1216, as amended.

"2. That the statement of claim averred that the real estate brokerage contract sued upon in this case was

entered into June 29, 1944; at the trial of the cause, without any amendment to said statement of claim having been offered and allowed, and, over the objection of counsel for defendant to such testimony being allowed to become part of the evidence, testimony as to an oral contract entered into between the parties to this action on March 19, 1944, and also testimony of an affirmance of this contract on June 10, 1944, was permitted to be given in evidence on behalf of plaintiff and to be considered by the jury.

"3. The verdict is against the evidence.

"4. The verdict is against the weight of the evidence.

"In respect to the two last given reasons, the evidence in the case will show that the only testimony to sustain plaintiff's allegation that there was a contract to pay him a real estate broker's commission of five percent for securing a purchaser for defendant's building, was his own unsupported testimony.

"The evidence will show that defendant testified and denied ever having entered into any contract for such commission with plaintiff.

"There are many inferences which spring from the facts proven which support defendant, one of these being that while the seller and purchaser agreed upon the terms of the sale on June 29, 1944, and entered into a written contract for the purchase and sale of the premises in question on July 21, 1944, and while on both aforesaid occasions plaintiff was present, he made no mention or demand for any commission or for any payment of this commission until after the deeds of conveyance had been passed and had been recorded on October 20, 1944.

"5. The evidence will show that plaintiff was, from May, 1944, acting as a real estate broker for the purchaser of the premises in connection with the premises

in question, without disclosing his connection with the purchaser to the seller, defendant herein."

On a rule for judgment n. o. v. every fact and inference must be taken most favorably in support of the verdict of the jury. Under such rule the statement of facts will be much different from the situation as viewed by defendant. Taking every fact and inference most favorable to plaintiff, the facts are as follows:

The defendant, Suzanne or Sue Wellbrock, owned a garage property in Carbondale; in the latter part of 1943 and the early part of 1944, she was negotiating a lease arrangement with the Grand Union Company to lease the property for a super market, reserving for herself space in the garage above the store for car storage; in order to make the garage suitable for store purposes and for car storage the property required remodeling, and defendant solicited bids for the remodeling of the premises in accordance with the requirements of the proposed lease; the bids of three local contractors were received but were not acceptable to defendant, and the Grand Union Company sent plaintiff, Ward R. Murphy, to see defendant during the month of March 1944 for the purpose of computing and furnishing an estimate for the necessary alterations; March 14, 1944, plaintiff met defendant at Carbondale at which time he gave defendant his card, which stated thereon that he was a real estate broker and a general contractor; plaintiff and defendant had a conversation concerning the sale of her premises, and defendant informed plaintiff that the price she desired was $50,000; plaintiff, as a contractor, prepared an estimate of the remodeling of the premises of defendant and sent the estimate of the remodeling to defendant on March 21, 1944; after plaintiff returned to Binghamton he had a conversation with Alec

Rosefsky for the purpose of inducing Rosefsky to buy the property; Rosefsky visited defendant at Carbondale on April 9, 1944, but refused to purchase because the taxes were higher than he was anticipating, and he was not willing to pay the purchase price of $50,000; the actual remodeling could not be started until approval was given by the War Production Board, which approval was not forthcoming until the latter part of May or the beginning of June; plaintiff had been a real estate man in New York State for 22 years, and, on April 11, 1944, a license to act as a real estate broker in the State of Pennsylvania was issued to him, good until February 28, 1945; subsequently, plaintiff and defendant had further conversations by telephone in regards to the sale of her property, and during the month of June, plaintiff transmitted to defendant an offer from Alec Rosefsky to purchase the property of defendant for the sum of $45,500; at that time plaintiff informed defendant that his commission for the sale of her real estate would be five percent of the purchase price, and defendant informed plaintiff that she was satisfied to pay plaintiff the commission of five percent of the purchase price of the sale of her real estate; this telephone conversation occurred sometime before June 29, 1944, and, on June 29, 1944, the parties met with the memorandum which gave the terms of the proposed sale, and defendant's attorneys began to prepare the contract of sale, the memorandum shows that defendant was informed of a proposed lease which the purchaser would make of the property for five years with a five-year option of renewal; October 20, 1944, the transaction was consummated by execution and delivery of a deed and mortgage, and plaintiff presented his bill for his commission, which the defendant refused to pay.

### Discussion

It is the contention of defendant that the verdict is against the law because the oral contract for real estate brokerage service and commissions between plaintiff and defendant as testified to by plaintiff was established by his evidence as having been entered into, if at all, between the parties on March 19, 1944, and at this time plaintiff was not a licensed real estate broker of the Commonwealth of Pennsylvania and to permit his recovery in this case would be contrary to the provisions of the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, as amended (63 PS §431 et seq.).

It is not disputed that plaintiff originally tried to arrange a sale to Alec Rosefsky at the price of $50,000 at a time when he did not possess a real estate broker's license to sell real estate in the Commonwealth of Pennsylvania, and the law is well established that a real estate broker not licensed in Pennsylvania cannot recover commissions for a deal which he negotiates, but the evidence in this case clearly establishes that no sale of the property of defendant for $50,000 was consummated, and, on April 11, 1944, plaintiff was duly licensed as a real estate broker in the Commonwealth of Pennsylvania, in accordance with the provisions of the Act of General Assembly, approved May 1, 1929, and amendments thereto. After plaintiff had been licensed as a real estate broker he brought Alec Rosefsky and defendant together and consummated the agreement for sale. The agreement of sale was from defendant to Alec Rosefsky for $45,500. At the time this agreement was made plaintiff informed defendant that his commission would be five percent of the purchase price, and she offered no objection. The sale was consummated on October 20, 1944.

In the case of Burns v. Gartzman et ux., 139 Pa. Superior Ct. 453, the court in that case, at page 457,

very carefully explains that the true test as to whether or not the broker is entitled to a commission is whether the broker is licensed at the time he performs the service. The court states as follows:

" 'The correct test is whether the plaintiffs were licensed at the date upon which they earned their share of the commission by performing the service for which they were employed, i. e., bringing the parties together and consummating the agreement for the sale.' "

In the case under consideration plaintiff was licensed at the time he earned his share of the commission by performing the service for which he was employed. The parties were brought together on June 29, 1944, at which time the agreement of sale was consummated, and the sale was consummated on October 20, 1944.

Therefore, there is no merit in defendant's contention that to permit recovery in this case would be contrary to the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, as amended.

Defendant contends that the statement of claim averred the real estate brokerage contract sued upon in this case was entered into June 29, 1944, and at the trial of the cause, without any amendments to said statement of claim having been offered and allowed, and, over the objection of counsel for defendant to such testimony being allowed to become part of the evidence, testimony as to an oral contract entered into between the parties to this action on March 19, 1944, and also testimony of an affirmation of this contract on June 10, 1944, was permitted to be given in evidence on behalf of plaintiff and to be considered by the jury.

In consideration of this contention, attention is called to the following testimony, wherein Mr. McGrath stated that the claim was not based on any contract made March 19, 1944:

"Q. What was that?

"A. I asked her first if she would sell the property, and she said, yes, she would be more anxious to sell the property than she would be to make the changes for the Grand Union, and I told her I might have a buyer, and I told her who it was, a Mr. Rosefsky, and I gave her two of my cards showing that I was a real estate broker and a general contractor, and she took them over and laid them on a desk. I told her at that time that my commission would be five percent of the sale. She said that would be all right, that she understood those things and that I would be entitled to it.

"MR. McDONOUGH:

"We object to that part of the answer, your honor, as not being in keeping with the allegation of the statement of claim, inasmuch as the first and only allegation as to any contract for the commission was alleged as of June 29, 1944. We ask to have that stricken out.

"MR. McGRATH:

"This is all preliminary, if the court please. We are not basing any claim on a contract made on this date."

Paragraph 6 of the statement of claim reads as follows:

"6. The offer to purchase the property by Alec Rosefsky for the price and upon the terms on which it was sold by defendant was communicated orally to the latter by plaintiff on or about June 29, 1944, at which time defendant orally accepted said offer and orally agreed to pay plaintiff for his services as broker in bringing about the sale five percent (5%) of the purchase price or the sum of two thousand, two hundred and seventy-five ($2,275) dollars."

The evidence establishes that plaintiff on or about June 29, 1944, communicated orally to defendant the offer of Alec Rosefsky to purchase defendant's property, and that defendant orally accepted the offer and orally agreed to pay plaintiff for his service as broker five percent of the purchase price.

It is not disputed that in March 1944 plaintiff had attempted to sell the defendant's property for $50,000, but this deal terminated without consummation, and plaintiff's claim is based on the contract entered into between plaintiff and defendant on or about June 29, 1944.

The evidence is to the effect that the communication to defendant was made a few days before June 29, 1944. However, this does not constitute a variance, because the plaintiff's statement of claim avers that the offer to purchase by Alec Rosefsky for the sum of $45,500 was communicated by plaintiff to defendant on or about June 29, 1944.

In order to upset a verdict the variance must be material and must be of such a nature as to mislead defendant: Calvey v. Coyer, 121 Pa. Superior Ct. 504; Jennings v. Philadelphia et al., 117 Pa. Superior Ct. 462.

The court finds no variance in this case between the pleadings and the proof such as could have misled defendant, or affected in any manner the trial of this case on its merits, or set up a different cause of action, or imposed any burden on defendant, and the court concludes that this contention is without merit.

The defendant's third, fourth and fifth contentions are general in nature and question plaintiff's good faith. The evidence establishes that Mr. Murphy came to Mrs. Wellbrock, in the first instance through the Grand Union Company, as a contractor. Mr. Murphy informed defendant that he was a real estate broker and asked if she was interested in making a sale of the property. He negotiated with Mr. Rosefsky as a real estate broker. Rosefsky, who eventually purchased the property, was not interested in the purchase unless he could obtain a lease from the Grand Union Company, and this fact was known to Mrs. Wellbrock.

Reading the record in its entirety, the court notes that there is wide variance in the testimony on the disputed claim. It was entirely within the province of the jury to consider all of the disputed testimony in arriving at its verdict, and a new trial will not be granted merely because the testimony was conflicting as it is for the jury to weigh the conflicting testimony. The verdict does not in any way indicate that the jury did not give full consideration to all of the evidence, and the court concludes that there is nothing in the record which warrants the court in disturbing the jury's verdict and will, therefore, make an order overruling defendant's motion for judgment n. o. v. and for a new trial.

### Order

Now, to wit, November 21, 1945, defendant's motion for judgment n. o. v. and for a new trial is overruled, and judgment sur verdict is directed to be entered for plaintiff upon payment of the jury fee.