Argued December 7, reversed December 30, 1955

## KLARR v. HECKART

291 P. 2d 1016

*Orval N. Thompson* argued the cause for appellant. On the brief were Weatherford and Thompson, Albany.

*C. M. Huddleston* and *Walter T. Durgan,* Corvallis, argued the cause and filed a brief for respondents.

ROSSMAN, J.

This is an appeal by the plaintiff from a judgment which the circuit court entered in favor of the defendants after it had sustained a demurrer to the second amended complaint. To facilitate convenience, we will refer to the challenged pleading as the complaint. The demurrer charged that the complaint failed to state a cause of action.

The complaint alleges the facts which we will now set forth. In March, 1951, the defendants, husband and wife, owned a hardware store which they wished to sell at the price of $176,000; the plaintiff was in the defendants' employ at that time "as a clerk in their store"; the plaintiff "was not engaged directly or indirectly in the business of buying, selling or dealing in any established business or business opportunity * * * and at no time was the plaintiff engaged in the business of a business chance broker"; March 15, 1951, the defendants employed the plaintiff to secure a purchaser for their store; the defendants promised to pay the plaintiff the reasonable value of his services if he found a purchaser; and "the plaintiff accepted said employment and undertook to and did furnish and provide a purchaser in the persons of George Shroyer and Helen Shroyer, husband and wife, and defendants sold the same to said purchaser produced by the plaintiff for the sum of One Hundred Seventy-six Thousand and no/100 Dollars ($176,000)". Continuing, the complaint alleges that the reasonable value of the plaintiff's services was $8,800. It also avers that "the plaintiff performed said one single transaction for the defendants in the sale of said personal property and no other transaction for the defendants or anyone else, at said time or prior to said time or since said

time or at all." We shall not mention other averments of the pleading, for, as will be seen from the nature of the defendants' challenge to the sufficiency of the complaint, they are not material to present purposes.

The following quotation, which we make from the respondents' (defendants') brief, reveals the issues submitted by this appeal:

> "The respondents demurred to said complaint, which demurrer was sustained by the trial Court upon the ground that the appellant could not recover unless it was alleged and proved that he had complied with Chapter 290 Oregon Laws 1947, and was duly licensed as provided in Title 59 O.C.L.A. (Chapter 696 ORS)."

Chapter 290 Oregon Laws 1947 provides that

> "it shall be unlawful for any person * * * to engage in the business of 'business chance broker' * * * without having a real estate broker's license, or a real estate salesman's license."

The defendants claim that a single sale, such as the one which the plaintiff claims he made, requires the individual to have a license even though he is not engaged in the business of a business chance broker.

Chapter 290 Oregon Laws 1947 (ORS 696.610 through 696.640) reads as follows:

> "Section 1. The term 'business chance broker' shall mean and include all persons, * * * that engage directly or indirectly in the business of buying, selling or dealing in any established business or business opportunity or good will or any interest therein, or who, for profit, compensation or commission engage in the business of offering to establish others in business or who declare to the public that they are engaged in the business of buying, selling or dealing in established businesses or business opportunities.

"Section 2. It shall be unlawful for any person, * * * to engage in the business of a 'business chance broker,' as defined by section 1 of this act, without having a real estate broker's license or a real estate salesman's license as provided in title 59, O.C.L.A.

"Section 3. It shall be the duty of the real estate commissioner of the state of Oregon to enforce the provisions of this act, and he shall have full power to issue, deny, suspend and revoke licenses in the manner and under the terms and conditions as provided in title 59, O.C.L.A.

"Section 4. Any person, * * * who shall engage in the business of a 'business chance broker' shall be bound by and subject to all the provisions of title 59, O.C.L.A., except that part of subsection 6, section 59-304, O.C.L.A., which provides that no license or fee shall be required of the licensee by any city, county, town or other political subdivision of this state."

Title 59 OCLA, to which the above-quoted passage referred, governed real estate brokers and created the Oregon real estate department in charge of a commissioner. That chapter of our laws, as amended, is now ORS 696.010 et seq, but since the cause of action which the complaint avers arose before ORS received legislative approval, we shall employ Title 59 OCLA as we proceed.

Section 59-103 OCLA read:

"One act or transaction in consideration of compensation, by fee, commission, salary or otherwise, or with the intention or in the expectation or upon the promise of receiving or collecting a fee of the kind or nature described in the definition of a real estate broker in section 59-102, whether said act be an incidental part of a transaction, or the entire transaction, shall constitute the person * * * offering or attempting to perform said act or trans-

action a real estate broker or a real estate salesman within the meaning of this act.''

Section 59-301 OCLA rendered it unlawful for any person

''to engage in or carry on or to advertise or hold himself, itself or themselves out as engaging in or carrying on the business, or act in the capacity of, a real estate broker or a real estate salesman within this state without obtaining a license as a real estate broker or a real estate salesman as provided for in this act.''

Section 59-302 OCLA prescribed the qualifications needed by licensed applicants. Section 59-303 OCLA governed non-resident applicants. Section 59-304 OCLA, as amended by Oregon Laws 1947, ch 429, said:

''(1) Every applicant for a real estate broker's license shall apply therefore in writing upon blanks prepared or furnished by the department. Said application shall be in such form as the commissioner may prescribe and shall set forth: (a) * * *.''

At that point the paragraph enumerated ten categories of information concerning the applicant which he was required to enter in his application. The paragraph of which we have just taken note was followed by five others which governed the application. One of the five provided that ''such application shall be accompanied by the recommendation of at least three resident citizens''. Another said: ''Every application for a license under the provisions of this act shall be accompanied by the license fee prescribed herein.'' The entire section governed applications for licenses and prescribed the information which every application for a license was required to submit concerning the applicant. It ordained the course which every applicant was required to pursue in order to qualify himself for a license.

Other sections of Title 59 OCLA empowered the commissioner in his discretion to require the applicant to furnish additional information and to promulgate rules and regulations governing the issuance of licenses. These further sections required the applicant to file a bond and to pay the fee exacted by the act. Still other sections authorized the commissioner to conduct disciplinary proceedings.

The defendants argue:

"A single act or transaction is sufficient to constitute actor a 'Business Chance Broker.' Chapter 290 Oregon Laws 1947; ORS 696.610-696.640; Section 59-103 O.C.L.A.; ORS 696.040; Hunter v. Cunning, 176 Or. 250, 273, 275; Crites v. Frozen Foods, 183 Or 191, 198, 201."

The passage of *Hunter v. Cunning,* supra, upon which the defendants particularly rely, follows:

"The doing of any single act of the business of a real estate broker, as defined in the statute, is made a violation thereof."

However, it will be recalled that § 59-103 OCLA expressly declared that

"One act or transaction in consideration of compensation, * * * shall constitute the person * * * a real estate broker or a real estate salesman within the meaning of this act."

*Crites v. Associated Frozen Food Packers, Inc.,* to which the defendants refer as *Crites v. Frozen Foods,* declared:

"We are mindful of the well settled rule that a single transaction which is merely incidental to the ordinary business in which the corporation is engaged does not constitute 'doing business' within the meaning of the act. 20 C. J. S. 48, § 1830, citing numerous authorities in support of the text, in-

cluding *Rashford Lumber Co. v. P. J. Dolan,* 122 Or. 572, 260 P. 224.

"A single transaction, however, may be of such character as to bring a corporation within the statute if it is a part of the ordinary business of the corporation."

In that case, the Seattle Association of Credit Men, a foreign corporation which had not qualified to do business in this state, sought to intervene. It was the holder of a common-law assignment for the benefit of creditors which had been made by two Oregon corporations. The assigned assets were located in this state. In sustaining the decree of the circuit court, which dismissed the complaint in intervention, this court engaged in the comment of which we have taken notice. It also declared:

"* * * The allegation of the intervenor that it 'has not and is not doing business within the State of Oregon' is not controlling in view of the specific allegation of facts showing that the intervenor is transacting business within the meaning of the statute.

* * * * *

"* * * The acceptance of the assignment imposed upon the Seattle Association of Credit Men certain active duties necessary to be performed in order to accomplish the purposes of the trust. We think it can not be said that in liquidating the assets of this insolvent company, pursuant to the authority vested in the Intervenor by the assignment, Intervenor would be engaged in an incidental or isolated business transaction. The execution of such trust involves a series of transactions which are a part of the ordinary business of this foreign corporation. Under the assignment it is necessary for such corporation to come into this state and through its agents take immediate possession of the property of the defendants, take an inventory of the same, and do various other acts necessary to fulfill its trust."

It will be observed that in the case just reviewed the Seattle Association of Credit Men was regularly engaged in the general collection business and in the administration of assignments for the benefit of creditors. Such was its business. It proposed to engage in that business in Oregon and, in so doing, liquidate the assets of the two insolvent Oregon corporations which had made assignments in its favor. In the case now before us, the plaintiff, according to the averments of his complaint, is a store clerk, and not a dealer in business chances. We think that a material distinction exists between the two cases.

■ We believe that the first section of the act under scrutiny prescribes the reach of the act. It subjects to the regulatory features of the act only those who engage

"in the business of buying, selling or dealing in any established business or business opportunity or good will or any interest therein, or who, for profit, compensation or commission engage in the business of offering to establish others in business or who declare to the public that they are engaged in the business of buying, selling or dealing in established businesses or business opportunities."

Those words clearly indicate that no one is subject to the act unless he is engaged in the business to which it is applicable. That must be our conclusion, unless the words "as provided in title 59, O.C.L.A." found in sections 2 and 3 of the act, infuse into it § 59-103 OCLA. It is our belief that the words "as provided in title 59, O.C.L.A." as they occur in section 2 mean that a person of the kind described in section 1, who wishes to obtain a license, must proceed in the manner prescribed in Title 59 OCLA, and that the same words found in section 3 mean that after he obtains a license

the real estate commissioner has the same power over him that he possesses over real estate brokers and real estate salesmen.

■ We think it is manifest from the complaint that the plaintiff was not engaged in the business of dealing in business chances and that, therefore, Oregon Laws 1947, ch 290, had no application to his case. Accordingly, error was committed when the demurrer was sustained. It should have been overruled.

Reversed.