Downing, Appellant, *v.* Halle Bros. Co.

Argued March 17, 1959. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and McBride, JJ.

*John M. Wolford,* for appellant.

*Irving Murphy,* with him *Gifford, Graham, Mac-Donald & Illig,* for appellee.

OPINION BY MR. JUSTICE MCBRIDE, April 20, 1959:
This appeal is from an order granting defendant's motion for judgment on the pleadings. Therefore the material facts, as pleaded, will be accepted.

The Halle Bros. Company, defendant, owned a valuable piece of property used as a parking lot in Erie, Pennsylvania. Plaintiff, Downing, who was a resident of Erie, acquired knowledge of the fact that defendant wished to sell its property and thereafter contacted the defendant corporation and its Cleveland realty agent, the Maerkle-White-Huxtable-Auble Co. He received, on January 31, 1952, a letter of authority from defendant's real estate agent to offer the lot to prospective purchasers according to the terms set forth therein.

"This letter will confirm our previous correspondence and various telephone conversations relative to the Halle Brothers Company real estate at 10th and French Streets, Erie, Pennsylvania. . . .

"The real estate is for sale subject to the terms of existing lease. The price is $200,000. . . .

"In a conference with Mr. Wright, of the Halle Brothers Company, as of yesterday, it was agreed that you again be authorized to offer the afore-described real estate to prospective purchaser or purchasers to whom it has not been previously submitted by me or by any other broker and who has no previous connection with any transaction involving the subject property. This listing is not exclusive with you and, sub-

ject to prior sale, this authority is for a period of three months from date.

"Should you be instrumental in consummating a transaction with me as co-broker, in accordance with this letter, your compensation will be payable out of proceeds to the owner therefrom, on a division of commission basis as agreed."

This authority was later ratified by H. Colvin Wright, the vice president-treasurer of defendant, in a letter of February 22, 1952. On the last mentioned date, the following writing was sent to plaintiff: "This letter will confirm the authority given to you by Mr. Auble in his letter to you dated January 31, 1952, in which you have been given permission to offer our property at 10th and French Streets in Erie, Pennsylvania, at the price and under the terms stipulated in his letter. His letter was written with our full knowledge and approval."

The last letter upon which plaintiff bases his complaint was signed by the same company officer on August 11, 1953, and stated: "Thank you for your letter of August 10 asking for a commitment from the Halle Brothers Company to the effect that, subject to the terms of its lease to the Hanna Parking Company, you are authorized to commit The Halle Brothers Company to a sale of its property at West 10th Street and French Street in Erie for the sum of $200,000.00 cash.

"You are hereby given such authority, which will extend for a period of three months from this date and will be subject to prior sale."

Subsequently defendant sold the property to the Erie Parking Authority, a purchaser whom plaintiff alleges was first contacted by him. Plaintiff's services were not used in connection with the closing of the transaction and his complaint avers only that he is entitled to compensation on a quantum meruit basis

for locating the purchaser and his efforts involved therewith.

The Act of May 1, 1929, P. L. 1216, 63 P.S. §432, as amended, provides, inter alia: "The term 'real estate broker' shall include all persons . . . who, for another and for a fee, commission or other valuable consideration, . . . shall negotiate the sale, exchange, purchase or rental, or shall offer or attempt to negotiate the sale, exchange, purchase, or rental, . . . of any real estate, interest in real estate, the property of another, . . . . One act in consideration of compensation, by fee, commission or otherwise, of buying, selling, renting or exchanging any such real estate of or for another, or attempting or offering so to do, . . . shall constitute prima facie evidence that the person . . . so acting or attempting to act, is a real estate broker within the meaning of this act."

Section 16 of the act, provides: "No action or suit shall be instituted, nor recovery therein be had, in any court of this Commonwealth by any person, copartnership, association, or corporation for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this act to others than licensed real estate brokers, unless such person, copartnership, association or corporation was duly licensed hereunder as real estate broker at the time of the doing of such act or the rendering of such service."

Plaintiff has never been licensed as a real estate broker in the Commonwealth of Pennsylvania. He contends, however, that he comes within the exceptions to the definition of a real estate broker found in §2(c) of the act: "Neither of the said terms 'real estate broker' or 'real estate salesman' shall be held to include within the meaning of this act . . . any person holding in good faith a duly executed letter of attor-

ney from the actual owner of any real estate, authorizing the sale, conveyance or leasing of such real estate for and in the name of such owner, . . ., where only one transaction is involved, and where such letter of attorney is recorded in the office of the recorder of deeds, . . . ."

However, the letters hereinabove set forth are not "letters of attorney" within the meaning of this act. Only one reported appellate case has interpreted this section of the act. In a per curiam opinion, the Superior Court, in *Freeman v. Foster*, 121 Pa. Superior Ct. 595, 596, 184 Atl. 469 (1936), said: "The expression 'letter of attorney' in the provision of the Act of 1929 that the terms 'real estate broker' and 'real estate salesman' shall not be held to include, inter alia, 'any person holding in good faith a duly executed letter of attorney from the actual owner of any real estate, authorizing the sale, conveyance or leasing of such real estate for and in the name of such owner, or the negotiating of any loan thereon' refers to a *power of attorney* constituting the person named therein the attorney-in-fact for the owner of real estate, with authority to sell, convey or lease the same in the name of the owner, or to negotiate a loan thereon."

Certainly, the letters received by plaintiff in this case did not give him the right to consummate all the terms of a sale, including the arriving at a price, deciding how the price should be paid or the type of warranties to be given. He had no right or authority to execute a deed "for and in the name of such owner". As the court below said in its opinion: "An examination of the letter from H. Colin Wright dated August 11, 1953, reveals no resolution of the corporation; no power to execute a deed and no power to receive the consideration paid. The plaintiff had obviously no power to sell for the sum eventually agreed upon in

the amount of $185,000.00, and had no power to do anything further than to negotiate for his principal. In other words, he was no more or less than a real estate salesman or broker in the usual sense of the words. This relationship is further made clear by the letter from Maerkle, White, Huxtable and Auble Co. referred to above which states, 'This listing is not exclusive with you and subject to prior sale. This authority is for three months from date.' "

The letters held by plaintiff are the same sort as those held by any licensed real estate broker. To hold such letters take the place of a license would be to completely emasculate the Act of 1929 and defeat its purposes.

Second, the letters authorizing the plaintiff to offer the real estate for sale were unrecorded at the time the plaintiff performed the services for which he is here seeking compensation. Downing allegedly acted in conformance with the authority contained in the letters during 1951, 1952 and 1953. The real estate was sold on December 18, 1953, at which time none of the letters which he had received were recorded. The alleged "letter of attorney" was not recorded until August 19, 1957, when plaintiff recorded the two letters from the defendant set forth in their entirety earlier in this opinion. Thus, when the plaintiff acted as a real estate broker, he did so illegally because the letter, whatever its nature or effect, was not recorded as required by the act. The later recordation, even if valid, would not make legal what was previously illegal. This Court has held that even obtaining a real estate license would not insulate against illegal acts done prior to licensing. "Subsequent compliance with the law will not vitiate illegality existing at the time of prior transactions, nor effect an enforceable cause of action to supplant one declared by the Legislature

to be unenforceable." *Custis & Co. v. Pennsylvania Salt Mfg. Co.,* 351 Pa. 148, 153, 40 A. 2d 481 (1945). See also *Burns v. Gartzman,* 139 Pa. Superior Ct. 453, 11 A. 2d 708 (1940).

To hold that a letter of attorney could be recorded, as here, four years after the services for which compensation is sought, would effectively vitiate the purpose for which the statute requires that "letters of attorney" be recorded. The protection afforded to the public by requiring that these letters be recorded would disappear if the holder of such a letter could effectively record it prior to starting suit thereon and many years after the services for which he is seeking compensation had been performed.

Plaintiff cannot recover in this action for an additional and perhaps even more fundamental reason, i.e. this present suit is barred by the doctrine of res judicata. In 1954, in the Court of Common Pleas of Erie County, this same plaintiff brought suit against this same defendant for compensation for services allegedly rendered by plaintiff in procuring a buyer for the same piece of land. In this suit plaintiff asserted "his claim for 50% of the realty commission which was payable to Mr. Auble [as aforesaid] for services rendered on a quantum meruit basis". The court granted the defendant's motion for judgment on the pleadings. Plaintiff moved to amend his complaint so as to state a quantum meruit action exactly as he now states it in this present complaint. This motion was denied. No appeal was taken.

In *Wallace's Estate,* 316 Pa. 148, 153, 174 Atl. 397 (1934) it was said: "Broadly stated, the rule of res judicata is that when a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the

parties to the suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation and affect the fund or other subject-matter then before the court. As we said in Hochman v. Mortgage Finance Corp., 289 Pa. 260, 263, 'The thing which the court will consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights. If this be the fact, then the matter ought not to be litigated again, nor should the parties, by a shuffling of plaintiffs on the record, or by change in the character of the relief sought, be permitted to nullify the rule. This is a universal rule. . . . State Hospital v. Con. Water Co., 267 Pa. 29, 37. . . .' "

In this present suit it is admitted that the parties are the same but plaintiff alleges this complaint is on a quantum meruit basis while the complaint in the earlier suit was on an express contract, the use of the term "quantum meruit" notwithstanding. However, it seems to us that both actions are between the same parties, cover the same transaction, and seek compensation on a quantum meruit basis. Even if the first action was on an express contract this second suit would still be barred. The crucial issue in both actions is whether the plaintiff is entitled to compensation for performing services which only a licensed real estate broker may legally perform. Section 16 of the act, previously quoted, bars recovery of "compensation" by an unlicensed real estate broker on any theory. It makes no difference whether recovery be posited on an express contract or on a quantum meruit basis.

For the reasons hereinbefore stated, the judgment is affirmed.