Argued and submitted January 6,
affirmed March 31, 1981

## MOODY,
### *Respondent,*

*v.*

## HURRICANE CREEK LUMBER COMPANY,
### *Petitioner,*

(No. 78-6061, CA 15162, SC 27335)

625 P2d 1306

Stuart M. Brown, Eugene, argued the cause for petitioner. With him on the brief was Young, Horn, Cass & Scott.

Clayton C. Patrick, Salem, argued the cause for respondent. With him on the brief was Roy Dwyer, Salem.

TONGUE, J.

**TONGUE, J.**

This is an action on a contract in which plaintiff alleged that defendant agreed to pay him a commission of five percent of the sale price of defendant's business if plaintiff would locate and refer a purchaser to whom the business was sold. Defendant's answer to that complaint alleged that any such agreement is void because plaintiff was not licensed "to carry on professional real estate activity." The case was tried before the court, without a jury. The trial court entered a judgment for plaintiff in the sum of $131,250. The Court of Appeals affirmed by an opinion which relied primarily upon a decision by this court in *Klarr v. Heckart,* 206 Or 178, 291 P2d 1016 (1955), in which it was held that no such license was required under the facts of that case. Defendant, by its petition for review, contends that the Court of Appeals was in error in its application of our decision in *Klarr* to the facts of this case.

*THE FACTS*

Defendant Hurricane Creek Lumber Company owned and operated a sawmill business at Joseph, Oregon.[1] Plaintiff was a sawmill machinery salesman for Portland Iron Works, with which company defendant did business. In July of 1978 defendant Johnson, a director and shareholder of Hurricane Creek, had a telephone conversation with plaintiff. The testimony is somewhat in conflict whether in that conversation Mr. Johnson told plaintiff that he was looking for a buyer "for their corporation" or "company" or for "someone to buy the mill." During that conversation plaintiff was offered by Mr. Johnson a commission of five percent of the sale price if he would locate, and refer to defendant, a purchaser to whom a sale was made. Defendant Gourley, president of Hurricane Creek, confirmed that agreement by letter dated July 26, 1978. The trial court made a finding of fact that on July 26, 1978, defendant agreed to pay plaintiff five percent of the sale price of defendant's "business and wood mill" at Joseph, Oregon, "if the plaintiff would locate or refer a purchaser to whom such a sawmill would be sold."

---

[1] Hurricane Creek Lumber Company is the only appellant and will be referred to as the defendant. A motion for summary judgment was granted in favor of defendants Johnson and Gourley, from which plaintiff has not appealed.

Plaintiff was not provided with a list of assets of the business and did not visit the site of the mill. On August 1, 1978, plaintiff referred to defendant a potential buyer of the sawmill, who eventually purchased it on September 9, 1978. Plaintiff did not assist or participate in the negotiation of the sale. Both the price and structure of the sale were worked out between defendant and buyer. At the request of the buyer, the sale was made as a sale of assets of the corporation, rather than as a sale of its stock. The assets included machinery, equipment, rolling stock, vehicles, spare parts, office equipment and supplies, logs, cut lumber, inventory, good will and two parcels of real property.

When plaintiff requested payment of his commission in accordance with his previous agreement with defendant, the defendant at first offered to compromise the amount of the commission. When plaintiff rejected that offer defendant refused to pay the commission. Plaintiff then filed this action.

The facts of this case present questions under two statutes: (1) those regulating business chance brokers, ORS 696.610 - .640, and (2) those regulating real estate brokers and salespersons, ORS 696.010 - .495. Defendant contends that plaintiff's activities required him to be licensed under the provisions of both statutes because the sale in question, as consummated, involved both a business and real estate. Plaintiff contends that his activity was subject only to the provisions of the statutes regulating business chance brokers and not those regulating real estate brokers and salespersons, and that the former statutes do not apply to a single and isolated transaction, as in this case.

1. *Plaintiff was not required to be licensed under the provisions of the business chance broker law because its provisions do not apply to a single and isolated transaction.*

■ ORS 696.620 provides that no person shall engage in the business of a "business chance broker" without having a real estate broker's license or a real estate salesman's license. ORS 696.610 defines "business chance broker" as:

"* * * all persons, firms, corporations and associations that engage directly or indirectly *in the business of* buying, selling or dealing in any established business or business opportunity or good will or any interest therein, or who, for profit, compensation or commission engage in the business of offering to establish others in business or who declare to the public that they are engaged in the business of buying, selling or dealing in established businesses or business opportunities." (Emphasis added)

In *Klarr v. Heckart, supra,* this court considered the application of this law (then Chapter 290 Oregon Laws 1947) to a fact situation similar to this case. In *Klarr,* the owners of a hardware store offered an employee a commission if he found a purchaser for their business. When the employee found a purchaser, the owners refused to pay the commission, contending that the employee needed to be licensed under the provisions of the "business chance broker" law. In holding in favor of the employee, this court held that involvement in a single transaction did not constitute being "engaged in the business of being a business chance broker" as that term is defined in Section 1 of Chapter 290 Oregon Laws 1947 (ORS 696.610) and, therefore, the employee was not subject to the licensing requirements of the "business chance broker" law.

Defendant contends that in *Klarr* this court "ignored" the applicability of ORS 696.640 and ORS 696.040 relating to "professional real estate activity." ORS 696.040 provides:

"One act or transaction of professional real estate activity is sufficient to constitute engaging in professional real estate activity, within the meaning of this chapter."

ORS 696.640 provides:

"Any person who engages in the business of a business chance broker is bound by and subject to all the provisions of ORS 696.010 to 696.490 and 696.610 to 696.730, except subsection (2) of ORS 696.110."

Defendant contends that by virtue of ORS 696.640 the single transaction rule of ORS 696.040 must apply to the provisions of the "business chance broker" law as well as the real estate broker law and, therefore, plaintiff in this case was required to have a license despite the isolated nature of his involvement.

An examination of *Klarr,* however, indicates that provisions substantially identical to ORS 696.040 and 696.640 existed at the time of that decision and were not "ignored" by this court in its analysis of the case. Section 59-103, OCLA[2] was the equivalent of what is now ORS 696.040, and Chapter 290 Oregon Laws 1947, Section 4[3] was the equivalent of what is now ORS 696.640. The texts of both provisions were set out in near totality in the course of our opinion in *Klarr* (at pp 180-82) and the applicability of the single transaction rule of Section 59-103, OCLA (ORS 696.040) was specifically discussed and rejected (at pp 185-86).

Thus, in *Klarr,* we began our analysis by noting that Section 1, 1947 Oregon Laws, Chapter 290 "prescribed the reach" of the "business chance broker" law, and that by its terms the Act only applied to those "engaged in the business" of doing the acts discussed in that section. 206 Or at 185. We then discussed (at p. 185) whether the "single transaction" rule of § 59-103 OCLA (ORS 696.040) was "infused" into the business chance broker law by virtue of Sections 2 and 3 of Chapter 290 Oregon Laws 1947,[4] and

---

[2] Section 59-103, OCLA provided:

"One act or transaction in consideration of compensation, by fee, commission, salary or otherwise, or with the intention or in the expectation or upon the promise of receiving or collecting a fee of the kind or nature described in the definition of a real estate broker in subsection 1 of this act, whether said act be an incidental part of a transaction, or the entire transaction, shall constitute the person, partnership, association or corporation offering or attempting to perform said act or transaction a real estate broker or a real estate salesman within the meaning of this act."

[3] Section 4 of Chapter 290 Oregon Laws 1947 provided:

"Any person, firm, corporation or association who shall engage in the business of a 'business chance broker' shall be bound by and subject to all the provisions of title 59, O.C.L.A., except that part of subsection 6, section 59-304, O.C.L.A., which provides that no other license or fee shall be required of the licensee by any city, county, town or other political subdivision of this state."

[4] Sections 2 and 3 of Chapter 290 Oregon Laws 1947 provided:

"Section 2. It shall be unlawful for any person, firm, corporation or association to engage in the business of a 'business chance broker,' as defined by section 1 of this act, without having a real estate broker's license or a real estate salesman's license as provided in title 59, O.C.L.A.

"Section 3. It shall be the duty of the real estate commissioner of the state of Oregon to enforce the provisions of this act, and he shall have full power to issue, deny, suspend and revoke licenses in the manner and under the terms and conditions as provided in title 59, O.C.L.A."

concluded that it was not. We did not specifically discuss whether § 59-103 OCLA was "infused" into the business chance broker law by virtue of section 4 of Chapter 290 Oregon Laws 1947 (ORS 696.640). That section was not "ignored," however, in that the text of the section had been set out previously in the decision. 206 Or at 181. Specific discussion of the provision would appear to have been unnecessary because that section stated only that the provisions of Title 59, OCLA (the real estate broker law) applied to those "who shall engage in the business of a 'business chance broker' * * *." As previously noted, the court in *Klarr* had already determined that the definition of "business chance broker" in Section 1, Chapter 290 Oregon Laws 1947 applied only to persons engaged in the "business" of buying, selling or dealing in business, etc., and did not apply to a person engaged in a single and isolated transaction.

For these same reasons we again hold, as in *Klarr*, that plaintiff was not "engaged in the business of 'business chance broker'" so as to require a license under the provisions of ORS 696.620.[5] It must still be determined, however, whether plaintiff was required to have a license as a real estate broker or salesperson under the provisions of ORS 696.010 - .495, because of the fact that real property was included in the sale.

2. *Plaintiff did not engage in "professional real estate activity" as defined by ORS 696.010(9) so as to require a license as a real estate broker or salesperson.*

■      ORS 696.020 provides that a person must have a license to engage in professional real estate activity. ORS 696.010(9) lists fifteen activities which constitute "professional real estate activity" so as to subject a person to the requirements of ORS 696.020. Defendant contends that plaintiff's involvement in the sale of the sawmill business falls within the provisions of ORS 696.010(9)(j), which provides that "professional real estate activity" occurs when a person:

---

[5] Defendant also contends that even if we accept the *Klarr* court's characterization of the business chance broker statutes, plaintiff was engaged as a salesman of sawmill machinery and, therefore, this is not an isolated instance. We find that contention without merit. The selling of sawmill equipment surely is not equivalent to selling businesses as that term is used in ORS 696.610 - .640.

"Assists or directs in the procuring of prospects, *calculated to result* in the sale, exchange, leasing or rental of real estate." (Emphasis added)

As previously noted, the real estate broker law differs from the business chance broker law in that it specifically provides that "one act or transaction of professional real estate activity is sufficient to constitute professional real estate activity * *." ORS 696.040.

It may be that if, in the course of selling a business, a person engages in what would otherwise be "professional real estate activity," as that term is defined in ORS 696.010(9) and 696.020, the provisions of both the "business chance broker" law and the "real estate broker" law would apply. This specific question need not be decided, however, because we conclude, for reasons to be stated, that plaintiff was not engaged in "professional real estate activity" as that term is defined by ORS 696.010(9).

It is evident from the facts of this case that plaintiff "assisted" in procuring a prospect that *did in fact* result in the sale of real estate. Under the terms of the statute, however, that in itself is not sufficient to constitute "professional real estate activity." The statute specifically requires that the "assistance" be *"calculated to result"* in the sale of real estate. It would appear that the words *"calculated to result"* requires some knowledge or intent on the part of the person "assisting or directing" that his conduct will "result in the sale, exchange, leasing or rental of real estate."

This conclusion is supported by the history of ORS 696.010(9)(j). Prior to 1941 that subsection was combined with what is now ORS 696.010(9)(k) and read:

"[A]ssists or directs in the procuring of prospects or the negotiation or closing of any transaction *which does or is calculated to result* in the sale, exchange, leasing or renting of any real estate." (Emphasis added) (See Section 1, Chapter 380 Oregon Laws 1939.)

Those provisions differ from the provisions of the present ORS 696.010(9)(j) in that those former provisions defined "professional real estate activity" as not only "assistance" that is *"calculated to result"* in the sale, etc., of real estate, but also "assistance" which in fact *does* result

in such sale, regardless of whether such a result was calculated.

In 1941, however, the legislature amended the statute by dividing provisions of the former section into two subsections (now ORS 696.010(9)(j) and (k)) and deleting the words "which does." Although no specific legislative history is now available to explain that change, it would appear that by intentionally removing the reference to conduct "which does * * * result" in the "sale * * * of any real estate," but retaining the reference to conduct which "is calculated to result" in the "sale * * * of any real estate," the legislature intended that "assistance" in "procuring of prospects" no longer be deemed to be "professional real estate activity" simply because it *in fact* results in the sale, etc., of real property, but that there must be some knowledge or intent that such "assistance" results in the sale of real property (i.e., that such conduct be "calculated to result" in the sale, etc., of real property).

It appears from the testimony in this case that plaintiff understood his role as being to find a buyer for defendant's "business" and that in undertaking to do so it was not "calculated" by him that his conduct would "result in the sale * * * of any real estate." Plaintiff did not visit defendant's sawmill and was not informed of what the assets of the business consisted. He did not participate in the negotiations for the sale. He was simply asked to find a buyer for the business of a corporation and that is what he did. For all that plaintiff knew, the sale of that business would be consummated as a sale of the stock of the corporation, rather than as a sale of its assets. We find that the evidence was sufficient to support a finding that in undertaking to find a purchaser for the business of defendant corporation it was not "calculated" by him that his conduct would "result in the sale * * * of any real estate." For these reasons, we hold that plaintiff was not engaged in "professional real estate activity" as defined by ORS 696.010(9) and, therefore, was not required to be licensed under the provisions of the "real estate broker" law.

In holding as we do, we are aware of the many cases cited by defendant for the proposition that the sale of a business that incidentally includes the sale of real estate

is subject to the licensing requirements of real estate broker laws,[6] in contrast to a minority of jurisdictions which hold that inclusion of real estate assets incidental to the sale of a business does not require licensing under real estate broker law,[7] and another minority of courts which allow recovery on a pro tanto basis between the "business" aspects of the sale and the real estate aspects of the sale.[8] *See generally* 82 ALR 3d 1139 (1978).

It is important to note, however, that few, if any, of the cases relied upon by the defendant involved states with business chance broker statutes and most of such cases involved real estate broker statutes similar to Oregon's pre-1941 statute, which extended to conduct "which *does or* is calculated to result" in the sale of real property,[9] as distinct from the present provisions of ORS 696.010(9)(j), which require that such conduct be *"calculated* to result in the sale * * * of real estate."

In sum, we hold that plaintiff was not engaged in "professional real estate activity" as defined by ORS 696.010(9), and thus was not subject to the licensing requirements of the "real estate broker" law. As previously noted, we also hold that plaintiff was not required to be

---

[6] *Marina Mgt. Corp. v. Brewer,* 572 F2d 43 (2d Cir., 1978) (applying Connecticut law); *Doran v. Imeson Aviation, Inc.,* 419 F Supp 586 (D.Wyo. 1976); *Bonasera v. Roffe,* 8 Ariz App 1, 442 P2d 165 (1968); *Abrams v. Guston,* 110 Cal App 2d 556, 243 P2d 109 (1952); *Folsom v. Callen,* 126 Ind App 201, 131 NE2d 328 (1956); *Thomas v. Jarvis,* 213 Kan 671, 518 P2d 532 (1974); *Kenney v. Paterson Milk & Cream Co.,* 110 NJL 141, 164 A 274 (1933); *De Metre v. Savas,* 93 Ohio App 367, 51 Ohio Ops 155, 113 NE2d 902 (1953); *Burns v. Gartzman,* 139 Pa Super 453, 11 A2d 708 (1940); *Thywissen v. FTI Corp.,* 518 SW2d 947 (Tex Civ App 1975); *Diversified Genr'l Corp v. White Barn Golf Course, Inc.,* 584 P2d 848 (Utah 1978); *Grammer v. Skagit Valley Lumber Co.,* 162 Wash 677, 299 P 376 (1931); *Payne v. Volkman,* 183 Wis 412, 198 NW 438 (1924).

[7] *Frier v. Terry,* 230 Ark 302, 323 SW2d 415 (1959); *Cary v. Borden Co.,* 153 Colo 344, 386 P2d 585 (1963); *Schindler v. Florida Real Estate Com.,* 144 So 2d 862 (3rd Dist 1962); *Myer v. Jova Brick Works, Inc.,* 38 AD2d 615, 326 NYS2d 321 (3rd Dpt 1971).

[8] *Abramson v. Gulf Coast Jewelry & Specialty Co.,* 445 F2d 802 (5th Cir 1971) (applying Alabama law); *Moreland v. Kilgore,* 83 Ga App 606, 64 SE2d 295 (1951); *Quick Shops of Mississippi, Inc. v. Bruce,* 232 So 2d 351 (Miss 1970); *Schoenfeld v. Meckes,* 166 Pa Super 101, 70 A2d 377 (1950).

[9] *See, e.g., Thomas v. Jarvis,* 213 Kan 671, 518 P2d 532 (1974); *Bonasera v. Roffe,* 8 Ariz App 1, 442 P2d 165 (1968); *Folsom v. Callen,* 126 Ind App 201, 131 NE2d 328 (1956); *DeMetre v. Savas,* 93 Ohio App 367, 51 Ohio Ops 155, 113 NE2d 902 (1953).

licensed either as a real estate broker or salesperson under the provisions of Oregon's "business chance broker" law because his activity was limited to a single and isolated transaction.[10] For these reasons the decision by the Court of Appeals is affirmed.

---

[10] Defendant also contends that the Court of Appeals erred in finding that plaintiff was aware of the *Klarr* decision prior to referring the purchaser to defendant, when in fact the evidence indicates he was informed of that case by his attorney after referring the purchaser to defendant. Although defendant is correct, that error by the Court of Appeals is unimportant in the disposition of this case.