Argued and submitted September 15; decision and order of dismissal of Court of Appeals reversed, case remanded to Court of Appeals for further proceedings December 31, 2020

STATE OF OREGON,
*Respondent on Review,*

*v.*

ALLISON CHAPMAN,
aka Alison Chapman,
aka Allison Kate Chapman,
*Petitioner on Review.*

(CC 18VI72579) (CA A168274) (SC S067066)

478 P3d 960

Intending to appeal a general judgment, defendant dispatched her notice of appeal by first-class mail on the last day of the appeals period. When the notice arrived at the court several days later, the Appellate Commissioner concluded that it was untimely and issued an order dismissing the appeal. Defendant sought reconsideration, arguing that her notice must be deemed filed on the date that it was mailed. Defendant relied on ORS 19.260(1)(a)(B), which provides that the date of filing a notice of appeal is its mailing or dispatch date if the notice is sent by a "class of delivery calculated to achieve delivery within three calendar days." On reconsideration, the Court of Appeals adhered to the Appellate Commissioner's dismissal of the appeal, holding that first-class mail does not fall within the terms of ORS 19.260(1)(a)(B), regardless of the circumstances. Defendant petitioned for review, arguing that the Court of Appeals had misinterpreted the statute. *Held*: Under the circumstances in which defendant mailed her notice of appeal, first-class mail constituted a "class of delivery calculated to achieve delivery within three calendar days" within the meaning of ORS 19.260(1)(a)(B); therefore, the notice was timely, having been filed on the date that it was mailed. Defendant also satisfied proof-of-mailing-date requirements in ORS 19.260(1)(a)(B) and (1)(b).

The decision and order of dismissal of the Court of Appeals are reversed. The case is remanded to the Court of Appeals for further proceedings.

En Banc

On review from the Court of Appeals.*

Nathan R. Morales, Perkins Coie LLP, Portland, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Gregory J. Mina.

_____

* Appeal from Coos County Circuit Court, Brett A. Pruess, Judge. 298 Or App 603, 448 P3d 721 (2019).

Julia Glick, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

James S. Coon, Thomas, Coon, Newton & Frost, Portland, and Elizabeth C. Savage, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Rachael A. Federico and Rachel M. Hungerford, Legal Aid Services of Oregon, Salem, filed the brief for *amicus curiae* Legal Aid Services of Oregon.

NAKAMOTO, J.

The decision and order of dismissal of the Court of Appeals are reversed. The case is remanded to the Court of Appeals for further proceedings.

**NAKAMOTO, J.**

In Oregon, an appellate court lacks jurisdiction to hear an appeal if the appellant failed to file a notice of appeal within the time period provided by statute. ORS 19.270(2)(b). Filing a notice of appeal may be accomplished by mail or commercial delivery, and any notice received within the statutory period is considered timely. But, in certain circumstances, the date of mailing or dispatch of a notice of appeal is deemed to be its date of filing, regardless of the date of its receipt by the appellate court. One of those circumstances is set out in ORS 19.260(1)(a)(B), which provides that the date of filing a notice of appeal is the date of mailing or dispatch if the notice is mailed or dispatched "by a class of delivery calculated to achieve delivery within three calendar days" and the party filing notice has proof of the mailing or dispatch date.

The issue in the present case is whether ordinary first-class mail is, or can be, a "class of delivery calculated to achieve delivery within three calendar days." The Court of Appeals majority concluded that first-class mail can in no circumstances be such a class of delivery and that, therefore, a notice of appeal that had been dispatched by first-class mail on the last day of the appeals period and received by the court two days later was untimely—requiring dismissal of the underlying appeal. *State v. Chapman*, 298 Or App 603, 448 P3d 771 (2019) (en banc). We reject the majority's analysis and conclusion and also reject an alternative theory for dismissing the appeal that was raised in a concurring opinion—a supposed failure to comply with proof-of-mailing-date requirements in ORS 19.260(1)(a)(B) and (1)(b). Accordingly, we reverse the Court of Appeals' dismissal of the appeal and remand to that court for further proceedings.

## I.   BACKGROUND

The facts that are relevant to this jurisdictional issue are not in dispute. On June 8, 2018, a Coos County Circuit Court judge entered a general judgment convicting defendant of driving while suspended, ORS 811.175, and failure to register a vehicle, ORS 803.300. Wishing to appeal from that judgment and acting without legal representation,

defendant sent a notice of appeal to the Appellate Court Administrator by first-class mail. Defendant certified that the "method of filing" she had used for her notice was "United States Postal Service, ordinary first class mail." A postage validation imprint (PVI) label[1] on the envelope showed that petitioner had submitted her notice of appeal to the United States Post Office (USPS) for mailing on Monday, July 9, 2018, the last day of the applicable appeals period.[2]

The Appellate Court Administrator received defendant's notice of appeal two days later, on Wednesday, July 11, 2018. The notice was forwarded to the Appellate Commissioner, who concluded that it was untimely and issued an order dismissing defendant's appeal on that ground.

Defendant sought reconsideration by the Court of Appeals, arguing that first-class mail was a "class of delivery calculated to achieve delivery within three calendar days," meaning that, under ORS 19.260(1)(a)(B), the date of filing related back to the date of mailing, which in her case was July 9, 2018—the last day of the appeals period. In support of her argument, defendant submitted material from the United States Postal Service (USPS) public website showing a delivery time of "1-3 business days" for first-class mail. *See* https://www.usps.com/ship/first-class-mail.htm (accessed Dec 18, 2020).

On reconsideration, a divided Court of Appeals, sitting en banc, adhered to the Appellate Commissioner's dismissal of the appeal. *Chapman*, 298 Or App at 614. A

___

[1] A PVI label is applied to a piece of mail by personnel at the post office when postage has been paid at the counter to mail that item. The item is retained in USPS custody and is not handed back to the customer. The date printed on the PVI label is the date of the mailing.

[2] Under ORS 19.255(1), a notice of appeal must be filed "within 30 days after the judgment appealed from is entered in the register." In this case, that 30-day period would have ended on July 8, 2018. However, July 8, 2018, was a Sunday, a day on which the appellate courts are closed. Given that circumstance, the appeals period ran "until the end of the next day the court [was] open," *i.e.*, July 9, 2018. *See* ORAP 1.25 (regarding computation of prescribed time periods); *accord* ORS 174.120 (excluding last day of period for compliance with a statutory time limitation if it is a Saturday or legal holiday); ORS 187.010(1)(a) (Sundays are legal holidays).

majority of the Court of Appeals concluded that the class of delivery by which defendant sent the notice, *i.e.*, first-class mail, was not one that was "calculated to achieve delivery within three calendar days." Pointing to the online USPS publication on which defendant had relied, the majority declared that, instead, first-class mail was calculated, *i.e.*, "planned or contrived," by the USPS, to achieve delivery within three *business* days—an entirely different time period. *Id.* at 607-11. Although the majority acknowledged that, in some circumstances, a delivery time of three business days would not differ from a delivery time of three calendar days, it concluded that the existence of such circumstantial possibilities was irrelevant to the statute's application. That was so, in the majority's view, because the statute's use of the term "class of delivery" established that the legislature intended it to apply only when the would-be appellant chose a class of delivery that was designed, *as a whole*, to achieve delivery within three *calendar* days. *Id.* at 611-14. And because first-class mail is not designed, *as a whole*, to achieve delivery in three *calendar* days, but rather, in three *business* days, an appellant who chooses to send a notice of appeal by first-class mail is not entitled to the relation-back benefit that ORS 19.260(1)(a)(B) provides. *Id.* at 614. The Court of Appeals majority also relied on evidence in the statutory and legislative history of ORS 19.260(1)(a)(B) from which it inferred that the legislature intended to exclude ordinary first-class mail from the statute's sphere of application. *Id.* at 608-11.

In a concurring opinion, one Court of Appeals judge rejected the majority's interpretation of the statute. She understood ORS 19.260(1)(a)(B) to require only that would-be appellants use a class of delivery calculated to achieve delivery of *their own* notice of appeal within three calendar days and concluded that, in the circumstances, defendant's use of first-class mail had satisfied that requirement. *Chapman*, 298 Or App at 614-22 (Aoyagi, J., concurring).[3]

---

[3] The concurrence also suggested that the majority's statutory and legislative history arguments read too much into the fact that the legislature did not directly and expressly address first-class mail when it enacted ORS 19.260 (1)(a)(B). *Chapman*, 298 Or App at 615-16 (Aoyagi, J., concurring).

However, the concurring judge agreed with the majority's result because, in her view, defendant had not satisfied other requirements set out in subparagraph (1)(a)(B) and paragraph (1)(b) of the statute—respectively, that "the party filing the notice ha[ve] proof from the United States Postal Service *** of the mailing or dispatch date" and "certif[y] *** and file[] thereafter" proof of the date of mailing or dispatch with the court to which the appeal is taken. *Id.* The concurring judge rejected defendant's contention that the dated PVI label on the envelope in which the notice had been sent—which, in accordance with ordinary practice, had been added to the case file—had satisfied those requirements. *Id.*

Two judges dissented. The dissenting judges would have held that defendant had satisfied both the "class of delivery" and proof-of-mailing-date requirements of ORS 19.260(1). 298 Or App at 622-29 (Egan, C. J., dissenting).

Defendant petitioned for review by this court, and we allowed the petition to consider whether the Court of Appeals majority, the concurrence, or both had erred in their analyses of the "class of delivery" and proof-of-mailing-date requirements in ORS 19.260(1). Two organizations, Oregon Trial Lawyers Association (OTLA) and Legal Aid Services of Oregon, moved to appear as *amicus curiae*, and we granted their motions.

## II.   THE STATUTE

Although the issues presented in this case focus on two specific provisions within ORS 19.260—subparagraph (1)(a)(B) and paragraph (1)(b)—the parties' contextual arguments rely heavily on other provisions in the statute. To make those arguments more immediately accessible, we begin by setting out the first two subsections of ORS 19.260 in their entirety. By way of introduction, we note that subsection (1) sets out the circumstances in which the date of *filing* a notice of appeal in the relevant appellate court will relate back to the date of its mailing or dispatch (assuming that the notice is sent by mail or commercial delivery service). Subsection (2), which is not directly at issue here, sets out the means by which *service* of a notice of appeal on other

parties may be accomplished by mail or commercial delivery and specifies that, when such means are used, the date of service is the date of mailing or dispatch. Thus, ORS 19.260 provides, in part:

"(1)(a)    Filing a notice of appeal in the Court of Appeals or the Supreme Court may be accomplished by mail or delivery. Regardless of the date of actual receipt by the court to which the appeal is taken, *the date of filing the notice is the date of mailing or dispatch for delivery, if the notice is*:

"(A)    Mailed by registered or certified mail and the party filing the notice has proof from the United States Postal Service of the mailing date; or

"(B)    *Mailed or dispatched via the United States Postal Service or a commercial delivery service by a class of delivery calculated to achieve delivery within three calendar days, and the party filing the notice has proof from the United States Postal Service or the commercial delivery service of the mailing or dispatch date.*

"(b)    *Proof of the date of mailing or dispatch under this subsection must be certified by the party filing the notice and filed thereafter with the court to which the appeal is taken. Any record of mailing or dispatch from the United States Postal Service or the commercial delivery service showing the date that the party initiated mailing or dispatch is sufficient proof of the date of mailing or dispatch.* If the notice is received by the court on or before the date by which the notice is required to be filed, the party filing the notice is not required to file proof of mailing or dispatch.

"(2)(a)    Service of notice of appeal on a party, transcript coordinator or the trial court administrator, or service of a petition for judicial review on a party or administrative agency may be accomplished by:

"(A)    First class, registered or certified mail; or

"(B)    Mail or dispatch for delivery via the United States Postal Service or a commercial delivery service by a class of delivery calculated to achieve delivery within three calendar days.

"(b)    The date of serving the notice under this subsection is the date of mailing or dispatch. The party filing the notice must certify the date and method of service."

(Emphases added.)

### III.   ARGUMENTS AND ANALYSIS

Defendant argues that both the Court of Appeals majority and the concurrence erred in their interpretations of ORS 19.260(1), albeit in different ways. She first challenges the majority's conclusion that, insofar as she sent her notice of appeal by first-class mail, she did not use a "class of delivery calculated to achieve delivery within three calendar days" and therefore cannot claim, under ORS 19.260 (1)(a)(B), to have filed her notice of appeal on the day that she mailed it.[4] She also challenges the concurrence's view that she did not have proof of the date that she mailed her notice of appeal and that she accordingly failed to satisfy the proof requirements in ORS 19.260(1)(a)(B) and (1)(b).

### A.   *Class of Delivery*

We first address what it means for "the notice" to be dispatched "by a class of delivery calculated to achieve delivery within three calendar days." ORS 19.260(1)(a)(B). The parties and *amici* all acknowledge that the question whether defendant's use of first-class mail comported with the "class of delivery" requirement in ORS 19.260(1)(a)(B) is one of statutory interpretation, to be resolved by examining the text and context of the statute, and any helpful legislative history, as set out in *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009).

#### 1.   *Text*

On a purely textual level, the parties appear to agree about the meaning of the terms "class of delivery" and "three calendar days"—that is, the former refers to a category or method of shipment provided by the USPS or other mailing service and the latter refers to three consecutive days on the calendar and is distinct from "three business days."[5] There is significant disagreement, however, about the adjectival phrase "calculated to achieve delivery within

---

[4] Defendant acknowledges that the relation-back benefit offered by ORS 19.260(1)(a)(B) depends on whether she sent her notice of appeal by a class of delivery calculated to achieve delivery within three calendar days, and that it is irrelevant that her notice of appeal *actually* was delivered to the Court of Appeals within three calendar days.

[5] The parties in this case had no need to address what constitutes a "business day" because defendant mailed her notice of appeal on a Monday and the delivery period was uninterrupted by a weekend or holiday.

three calendar days." The parties dispute (1) the meaning of the word "calculated" and (2) whether the phrase concerns the notice of appeal at issue, as dispatched using the chosen class of delivery, or all notices of appeal dispatched using that class of delivery.

With regard to the first disputed point, the Court of Appeals majority drew what it deemed to be the most relevant definition of "calculated" from the dictionary—"planned or contrived so as to accomplish a purpose." *Chapman*, 298 Or App at 606 (citing *Webster's Third New Int'l Dictionary* 315 (unabridged ed 2002)). Noting that "calculated" appears in the passive voice, the majority asserted that the phrase "class of delivery calculated to achieve delivery within three calendar days" necessarily means that it is the USPS or other delivery service that plans or calculates the delivery times for the classes of delivery it offers, "because it is the delivery service that organizes itself to accomplish deliveries within one estimated time frame or another." *Id.* at 606. Applying that meaning, the majority concluded that first-class mail is *not* a class of delivery calculated to achieve delivery within three *calendar* days, given that, on its public website, the USPS describes the delivery time for first-class mail as "1-3 business days."

Defendant argues, however, that, in the context of ORS 19.260(1)(a)(B), "calculated" simply means "likely." And, defendant asserts, although the USPS advertises a delivery time of "1-3 business days" for first-class mail on its website, as a practical matter, it is "likely," *i.e.*, more probable than not, that items mailed by first-class mail will arrive within three calendar days, given that the "business day" qualification would only be relevant for items mailed before a weekend or holiday and that, under the USPS standard, at least some items will achieve delivery within one or two business days. Defendant thus concludes that first-class mail categorically qualifies as a "class of delivery calculated to achieve delivery within three calendar days" and that her use of first-class mail to send her notice of appeal made ORS 19.260(1)(a)(B) applicable.

Beyond the evident weaknesses in defendant's probability analysis, we are not persuaded by her underlying contention that, in this context, "calculated" means merely

"likely," in the sense of "more probable than not." Although "likely" is, indeed, a meaning that appears among the dictionary definitions of "calculated," it is an outlier among those definitions. We note, in that regard, that *Webster's Third New International Dictionary* defines "calculated," when used as an adjective, to mean:

> "**1 a :** worked out by calculation **:** computed mathematically <~ tables> **b :** ascertained or estimated by calculation <the ~ velocity of a bullet> **c :** engaged in, undertaken, or displayed after reckoning or estimating the statistical probability of success or failure – *see* CALCULATED RISK **2 :** planned or contrived so as to accomplish a purpose or achieve an effect **:** thought out in advance **:** deliberately planned <his ways are not ~; he considers himself as honest as noonday –G.W. Brace> <that political justice is attainable only by a nicely ~ system of checks and balances –V.L. Parrington> **3 :** brought about or brought into existence as a consequence of deliberate intent or planning **4 :** LIKELY – used with complementary infinitive <a circumstance ~ to excite strong suspicion –W.E. Gladstone> <not ~ to be soft on such a subject –A.H. Vandenberg †1951> **5 :** SUITED, FITTED, ADAPTED **:** of such a nature as – used with a complementary infinitive <she was perfectly ~ to convince the sisters that times had worsened –Arnold Bennett>."

*Webster's* at 315 (unabridged ed 2002). The first three meanings are firmly rooted in notions of deliberation or planning, while the last—"suited, fitted, adapted"—conveys at least a connotation of purposeful design. Only the meaning that defendant contends for—"likely"—is entirely divorced from the notion of active and purpose-driven analysis that inhere in the word's root verb—"calculate."[6]

---

[6] "Calculate" is defined to mean:

"**1 a :** to ascertain or determine by mathematical processes esp. of some intricacy <~ atomic weights> **b :** to reckon by exercise of practical judgment rather than by strict mathematical process **:** ESTIMATE **c :** to solve the significance of **:** probe the meaning of **:** figure out **:** INTERPRET <trying to ~ his expression –Hugh MacLennan> **2 :** to plan the nature of beforehand **:** think out **:** FRAME **3 :** to design, prepare, or adapt by forethought or careful plan **:** fit or prepare by appropriate means—used chiefly as past part. with complementary infinitive <*calculated* to succeed> **4 :** *chiefly North* **a :** to judge to be true or probable on the basis of the evidence at hand **:** SUPPOSE, BELIEVE, THINK **b :** INTEND, PURPOSE, PLAN."

*Webster's* at 315.

Defendant contends that we should presume that "likely" is the meaning that the legislature intended because it is the one that is most consistent with the grammatical construction of ORS 19.260(1)(a)(B). Defendant notes that the word "calculated" is used in ORS 19.260(1)(a)(B) with a complementary infinitive—"to achieve"—and that "likely" is one of only two meanings in the quoted definition that expressly refer to the use of a complementary infinitive. Defendant also contends that the fact that the provision uses the passive voice and does not name an actor suggests that the legislature did not intend to require any actual act of calculation—leaving "likely" as the most apposite meaning.

But, as the state points out, the fact that a dictionary notes that the "likely" meaning of "calculated" typically is used with a complementary infinitive does not mean that the word's other meanings are *not* used with a complementary infinitive at times. And neither does the passive construction indicate an intent to bypass the notion of *active* "calculat[ion]" by some person or entity. In fact, in a variety of statutes that use the passive "calculated" with a complementary infinitive, the word is either evidently used or has been deemed by this court to be used to convey active evaluation and intention. *See, e.g.*, ORS 192.324(4)(a) (when responding to public record requests, the "public body may establish fees reasonably calculated to reimburse it for its actual cost in making personal information available"); ORS 802.183(1) (Oregon Department of Transportation may set fees for providing personal information from its records that are "reasonably calculated to reimburse the agency for the actual cost of providing the information"); *Moody v. Hurricane Creek Lumber Co.*, 290 Or 729, 736, 625 P2d 1306 (1981) (stating that, in the phrase "assists or directs in the procuring of prospects calculated to result in the sale, exchange, lease or rental of real estate" in *former* ORS 696.010(9)(j), "'calculated to result' requires some knowledge or intent on the part of the person 'assisting or directing' that his conduct will 'result in the sale, exchange, leasing or rental of real estate'"). And even when the "likelihood" of a specified result seems to be *part* of what the legislature intended to convey by using the "calculated to" wording, it is not the free-floating, greater-than-fifty-percent probability that

defendant seems to contend for but rather a more definitive and purposeful estimation, as determined from the standpoint of a person who is charged with achieving or intends to achieve that result.[7]

Thus, although we cannot completely dismiss the possibility that the legislature intended the word "calculated" in ORS 19.260(1)(a)(B) to mean simply "likely," we are far more inclined to think it chose the word to convey (as it usually does) some sort of purposeful and considered plan or estimation. In either case, of course, the phrase "calculated to achieve delivery within three business days" modifies the term that precedes it—"class of delivery." If the term "calculated" has the meaning that we think most probable, then ORS 19.260(1)(a)(B) refers to a class or method of shipment that is designed or estimated to achieve delivery within three calendar days. And because classes of delivery are created and offered to the public by the USPS and other delivery services, it necessarily is those delivery services that do the planning or estimation, i.e., "calculat[ion]," to which ORS 19.260(1)(a)(B) alludes. In other words, the provision would require appellants to choose a class of delivery that the USPS or other delivery service has purposefully designed or estimated—and has formally offered or made known to the public—to accomplish delivery within three calendar days.[8]

---

[7] For example, when considering whether an attempt at service was made "in a manner reasonably calculated under all the circumstances to apprise the person served of the existence and pendency of [an] action" within the meaning of ORCP 7 D, the Court of Appeals has referred to the "likelihood" that the method used will apprise the person served of the action, but it is a likelihood based on the totality of the circumstances as they were known to the plaintiff at the time of service and as compared to other methods that have been deemed sufficient in other circumstances. *See, e.g.*, *Dept. of Human Services v. K. L.*, 272 Or App 216, 225, 355 P3d 926 (2015); *Pham v. Faber*, 152 Or App 634, 644-45, 955 P2d 257, *rev den*, 327 Or 484 (1998); *Hoeck v. Schwabe, Williamson & Wyatt*, 149 Or App 607, 621, 945 P2d 534 (1997).

[8] An informal estimate offered by an *employee* of the delivery service would not qualify. As noted, ORS 19.260(1)(a)(B) implies that it is the USPS or commercial delivery service that must calculate that the class of delivery will achieve delivery within three calendar days. That fact, and the fact that the delivery service's calculation must be accessible to the appellate courts, which must determine whether ORS 19.260(1)(a)(B) applies to the notices of appeal they receive, suggests a standard or estimate that is formally offered or made known to the public by the delivery service.

If, on the other hand, the term "calculated" means "likely" in this context, then the intentions and designs of the USPS and other delivery services are not relevant: An appellant would only have to show that, as a factual matter, an item sent through the chosen class would have a greater than fifty percent chance of being delivered within three calendar days. Still, given that the "calculated to achieve delivery" phrase modifies "class of delivery," ORS 19.260 (1)(a)(B) would demand a likelihood of three-day delivery *by the chosen class*, not a likelihood of three-day delivery *in general*.

The parties do not appear to dispute the latter point, *i.e.*, that the focus of the three-day delivery inquiry in ORS 19.260(1)(a)(B) is necessarily on the "class of delivery" chosen by the would-be appellant. But there *is* a dispute about *what* is to be delivered in the adjectival phrase "calculated to achieve delivery within three calendar days." Adopting the view of the Court of Appeals majority, the state contends that, because that phrase modifies the term "class of delivery," it is the class of delivery itself, *as a whole*, that matters; by design, the class must ensure delivery of notices of appeal within three calendar days. Under that interpretation, the individual circumstances in which a notice of appeal is mailed or dispatched are irrelevant: The expected delivery time for notices of appeal mailed on Mondays and Tuesdays may be three calendar days—because, in those circumstances, the three business days advertised by the USPS and three calendar days are one and the same—but first-class mail, *as a class*, remains one that is designed and estimated by the USPS to achieve delivery within three *business* days.

*Amicus curiae* OTLA offers a different interpretation. Taking its cue from the concurring opinion in the Court of Appeals, OTLA argues that ORS 19.260(1)(a)(B) is addressed to the filing, by mail or dispatch, of a *particular* notice of appeal, and that, in consequence, the provision should be read to require mailing by a class of delivery calculated to achieve delivery of *that notice of appeal* within three days. If that meaning is applied, OTLA notes, then on the day that defendant mailed her notice of appeal—a Monday—first-class mail was a class of delivery calculated

to achieve delivery *of the notice* within three calendar days, because the three business day time period specified by the USPS for first-class mail *as a class* would amount to three calendar days for an item mailed on a Monday.

On a purely textual level, both interpretations are plausible. The state is correct that, grammatically speaking, the "calculated to achieve delivery" phrase modifies the immediately preceding term, "class of delivery," which, in the absence of some specification of what is to be delivered within the three calendar day time frame, could suggest a referral back to the class of delivery and how it applies to all notices of appeal. On the other hand, it is perfectly logical and grammatically acceptable to assume that the provision is requiring mailing or dispatch of the notice at issue— "the notice" being the subject of the entire subsection of the statute—by a class of delivery calculated to achieve delivery of that notice within three calendar days. In fact, precisely because of the provision's overall focus on "the notice" and whether its dispatch date will be considered its filing date, that reading of the statute is a more natural one—that is, more in tune with the way an ordinary reader would understand the provision.

As the foregoing discussion shows, a perusal of the statutory text alone is suggestive but not determinative of legislative intent behind the reference in ORS 19.260 (1)(a)(B) to a "class of delivery calculated to achieve delivery within three calendar days." The most natural and compelling reading of the phrase requires a party to use of a class of delivery that is designed or estimated by the USPS or other delivery service to achieve delivery of the notice in question, in the circumstances, within three calendar days. That interpretation makes the provision applicable in some, but not all, circumstances in which a would-be appellant mails his or her notice of appeal by first-class mail on the last day of the appeals period. But the other interpretations offered by the parties are at least plausible.

2. *Context*

We turn to the parties' contextual arguments, which are less concerned with the broader meaning of ORS 19.260(1)(a)(B) than they are with whether the particular

class of delivery at issue here—first-class mail—is affir-
matively excluded from that provision's application. In
overview, the state contends that, if ORS 19.260(1)(a)(B)
is considered in the light of other subsections and para-
graphs of the statute, it is evident that first-class mail is
affirmatively excluded from the scope of subparagraph
(1)(a)(B), while defendant contends that subparagraph
(1)(a)(A) demonstrates that the legislature must have
intended to include first-class mail. In our view, the contex-
tual evidence is inconclusive.

    We start with the state's arguments. The state notes
that subsection (1) of the statute provides two alternatives
that allow appellants to use the mailing date as the filing
date of a notice of appeal: the first for notices sent by "regis-
tered or certified mail," ORS 19.260(1)(a)(A), and the second
for notices sent "by a class of delivery calculated to achieve
delivery within three calendar days," ORS 19.260(1)(a)(B).
Both alternatives, the state adds, require that the party
filing the notice of appeal "ha[ve] proof" from the USPS or
other delivery service of the mailing or dispatch date. And
for both alternatives, the party filing the notice of appeal
must certify and file proof of the date of mailing or dispatch
with the appellate court. ORS 19.260(1)(b).

    The state contends that those two alternatives, cou-
pled with the proof requirements, only make sense if the
latter alternative set out in ORS 19.260(1)(a)(B) and at issue
here is limited to *expedited* classes of delivery—which would
exclude first-class mail. In the state's view, the legislature
enacted an alternative based on first-class mail, which
requires a party to purchase an add-on service of certified
or registered mail from the USPS for proof of mailing, and
a second alternative based on an expedited class of delivery,
which also requires a party's contact with the shipper and
more or less automatically gives the party the proof of mail-
ing required by paragraph (1)(b). Simply depositing a notice
of appeal in a mailbox to be delivered by first-class mail, on
the other hand, would not give the sender the required proof.
Moreover, the state argues, subparagraph (1)(a)(A) becomes
entirely superfluous if subparagraph (1)(a)(B) is not limited
to expedited services: First-class mail is the only class of
mail that is eligible for registered or certified mail service,

and if a party can obtain the relation-back benefit provided in subparagraph (1)(a)(B) by using ordinary first-class mail, there is no need to separately provide that benefit for certified and registered mail.

The state also points to certain similarities and differences between the provisions in subsection (1) of ORS 19.260 that pertain to *filing* of notices of appeal by mail or delivery service and those in subsection (2) that pertain to *service* of notices of appeal by mail or delivery service. The state notes that, as in paragraph (1)(a), paragraph (2)(a) sets out two alternatives that allow appellants to use the date of mailing as the date of service. The second of those alternatives refers to a "class of delivery calculated to achieve delivery within three calendar days," ORS 19.260(2)(a)(B). However, the state observes, the first alternative, at subparagraph (2)(a)(A), differs from the alternative provided in subparagraph (1)(a)(A), in that it lists "[f]irst class mail, registered or certified mail" as within the provision's application. The state asserts that, particularly when the relation-back provisions in ORS 19.260 for filing and service are otherwise so similar, the inclusion of first-class mail in subparagraph (2)(a)(A) but not in subparagraph (1)(a)(A) indicates an affirmative intent to exclude first-class mail from the relation-back benefit provided for filing notices of appeal in subsection (1).

Finally, the state asserts that the historical context in which ORS 19.260(1)(a)(B) was enacted supports a conclusion that first-class mail is affirmatively excluded from that provision's application. The state notes that, traditionally, filing of a notice of appeal by mail or otherwise was deemed to have occurred when the clerk of the court *received* it and placed it in the case files. *See McDonald v. Crusen*, 2 Or 258, 258 (1868); *Bade v. Hibberd*, 50 Or 501, 503-04, 93 P 364 (1908). And in 1979, when the legislature enacted the first statute that allowed the mailing date of a notice of appeal to be counted as the filing date, it provided that relation-back benefit only for notices sent by certified or registered mail. Or Laws 1979, ch 297, § 1. The general rule—that notices are deemed filed upon receipt—continued to apply for notices sent by first-class mail. *See State v. Harding*, 347

Or 368, 371-72, 223 P3d 1029 (2009) (rejecting argument that date of mailing counted as the date of filing for a notice of appeal sent by ordinary first-class mail). Thus, for most of Oregon's legal history, notices sent by ordinary first-class mail were deemed filed *upon receipt*. The state asserts that, because ORS 19.260(1)(a)(B) was enacted against that backdrop, it is reasonable to assume that any legislature that intended to change that rule would have done so clearly and expressly. The absence of any express reference to first-class mail in the statute, the state concludes, thus indicates that the legislature did *not* intend to change the rule when it added subparagraph (1)(a)(B) to ORS 19.260.

The state's contextual arguments, though, do not account for other aspects of the historical development of ORS 19.260. Considering the development of the statute from 1979 to 2015 opens up another view of what the legislature was accomplishing.

The history of the statute is set out in the Court of Appeals majority opinion. *Chapman*, 298 Or App at 608-09. In 1979, as noted, the legislature first enacted a statute permitting the date of filing to relate back to the date of mailing, then codified as ORS 19.028 (1979), which provided that notices of appeal and petitions for review may be filed by mail and that

> "[t]he date of filing such notice or petition shall be the date of mailing, provided it is mailed by registered or certified mail and the appellant has proof from the post office of such mailing date. *** Proof of mailing shall be certified by the appellant and filed thereafter with the court to which the appeal is taken."

In 1987, *former* ORS 19.028 was amended to add a new subsection (2), which authorized *service* of a notice of appeal on other parties, court reporters, and court clerks by mail, "subject to the same requirements as filing notice of appeal by mail as provided in subsection (1) of this section." Or Laws 1987, ch 852, § 6. Presumably, that provision meant that the mailing date would be deemed the service date of the notice, "provided it is mailed by registered or certified mail and the appellant has proof from the post office of such mailing date."

In 1989, however, the legislature amended subsection (2) of *former* ORS 19.028 to differentiate the rule for *service* by mail from the rule for *filing* by mail. The new subsection (2) provided that service of a notice of appeal

> "may be accomplished by first class, registered or certified mail. The date of serving such notice shall be the date of mailing. Proof of mailing shall be certified by the party filing the notice and filed thereafter with the court to which the appeal is taken."

Or Laws 1989, ch 768, § 12. Notably, in ending the former reference to the requirements of subsection (1) and setting out a specific rule for service of notice, the 1989 version added first-class mail as a category of mail that could be used, in addition to certified and registered mail, to serve a notice of appeal. The 1989 amendment also removed the requirement, incorporated by reference, that the person serving the notice "ha[ve] proof from the post office" of the mailing date. However, the new subsection (2) continued to require proof of service; the party had to certify having mailed notice to the persons served and had to file that certification with the appellate court.

In 1997, ORS chapter 19 was reorganized. As a result, *former* ORS 19.028 became ORS 19.260.

In 2015, the legislature enacted the amendments to ORS 19.260 that are at issue here. For both filing of notice and service of notice, the legislature added mailing or dispatch by a "class of delivery calculated to achieve delivery within three calendar days" as a method under which the mailing or dispatch date would count as the date of filing or service. ORS 19.260(1)(a)(B), (2)(a)(B); Or Laws 2015, ch 80, § 1. But it maintained the difference in the two subsections with respect to "hav[ing] proof" of the dispatch date, and, while leaving in place the requirement that a person filing notice of appeal must certify and file "proof of the mailing or dispatch date," it changed the previously equivalent requirement with respect to service of the notice to require only that the person filing the notice of appeal "certify the date and method of service."

That history of ORS 19.260 shows that having and filing "proof" of mailing date has been and remains a

requirement for obtaining the statute's relation-back benefit when *filing* a notice of appeal but, at least since 1989, such proof has *not* been a requirement for obtaining that benefit when *serving* the same notice of appeal. Before 1987, when the statute addressed only the filing of notices of appeal, the limitation to registered and certified mail would have satisfied the proof of mailing date requirement more or less automatically. In 1989, when the legislature clarified that the statute's application to *service* of a notice of appeal did not depend on the appellant having proof of the mailing date, it also made sense to clarify that the relation-back benefit was available for notices served by ordinary first-class mail— which would be expected to be delivered within the same timeframe as registered and certified mail, albeit without proof of mailing date—because that is the class of mail to which those mailing services are attached. When, in 2015, the legislature chose to expand the category of delivery methods to which the relation-back benefit would apply for both filing and service of notice of appeal, it did so by leaving the specified delivery methods in the filing and notice provisions in place, but adding to each the same generalized description of additional methods of delivery by mail or delivery service that would qualify—"class[es] of delivery calculated to achieve delivery within three calendar days."

Once it is understood how ORS 19.260 changed over time, it becomes clear that the specific reference to "registered or certified mail" in present-day ORS 19.260(1)(a)(A) need not have the significance that the state ascribes to it—either when compared to the generalized description of acceptable classes of delivery in subparagraph (1)(a)(B) or to the similarly specific reference to "first-class, registered or certified mail" in subparagraph (2)(a)(A). In expanding the range of methods of delivery to which the relation-back benefit for filing and serving notices of appeal would apply, the 2015 legislature simply added to each subsection's precise specification of acceptable classes of mail a new category that, instead of *specifying* additional classes of delivery, provides a general standard. It may not have considered, at the time, how that new general standard would relate to the earlier, precisely specified categories, including whether

it made them redundant.[9] Neither did the 2015 legislature necessarily give any particular thought to the status of first-class mail under the newly added category. In short, when considered in the context of ORS 19.260 as a whole, the absence of any mention of first-class mail in subparagraph (1)(a)(A) does not suggest an affirmative intention to exclude ordinary first-class mail from the scope of (1)(a)(B).

On the other hand, neither does subparagraph (1)(a)(A)'s specification of "registered or certified mail" constitute definitive evidence that first-class mail falls within the scope of subparagraph (1)(a)(B), as defendant suggests. Defendant's theory, in that regard, begins with the proposition that ORS 19.260 is generally addressed to two issues: expected speed of delivery and proof of the date of mailing to the courts. Defendant contends that, because ORS 19.260 (1)(a)(A) identifies "registered or certified mail" as acceptable methods of delivery, and both methods are ancillary services that may be added only to first-class mail,[10] one can reasonably infer that, before 2015, when the statute's relation-back benefit was available only for "registered or certified mail," first-class mail was an acceptably speedy class of delivery by which to file a notice of appeal by mailing. It stands to reason, defendant continues, that, when the legislature thereafter liberalized the requirements for filing notice by mail by adding subparagraph (1)(a)(B), it understood that first-class mail would be acceptably speedy under that subparagraph as well. Defendant offers a reason to believe that the legislature understood that first-class mail was a sufficiently speedy method for delivery of a notice of appeal; but that does not compel the conclusion that the legislature therefore amended ORS 19.260 to include first-class mail, devoid of the proof of mailing date that one obtains by paying for certified or registered mail as specified in ORS

---

[9] Moreover, as defendant notes, the apparent redundancy is perfectly rational and may have been intentional: Subparagraph (1)(a)(A) sets out specific factual scenarios (certified and registered mail) which can be deemed acceptable automatically, while subparagraph (1)(a)(B) sets out a general catchall, which requires further inquiry into the facts. *Cf.*, *e.g.*, *State ex rel Hydraulic Servocontrols Corp. v. Dale*, 294 Or 381, 384-85, 657 P2d 211 (1982) (explaining why similar statutory arrangement is not irrational).

[10] They also apply to the USPS's equivalent to first-class mail for packages, "priority mail."

19.260(1)(a)(A). All in all, context fails to stack up in either party's favor.

    3.   *Legislative history*

        We proceed to the legislative history of ORS 19.260(1)(a)(B), which, as noted, was added to ORS 19.260 by the 2015 Legislative Assembly. Before then, ORS 19.260(1) provided that the filing date of a notice of appeal was its mailing date, if the notice of appeal was "mailed by registered or certified mail and the appellant has proof from the post office of such mailing date." In 2015, members of the Oregon State Bar's Appellate Practice Section proposed a bill to the legislature that would allow the relation-back benefit provided in ORS 19.260(1) to apply to additional modes of delivery. The bill, House Bill (HB) 2336 (2015), originally would have amended ORS 19.260(1)(a) to provide that the date of mailing would count as the date of filing if the notice is (A) "[m]ailed by registered or certified mail ***" or (B) "[m]ailed for delivery within three calendar days via the United States Postal Service or a commercial delivery service ***."[11]

        The bill was not controversial and generated little discussion in the legislature. It was introduced in the House Committee on Judiciary by a representative of the Appellate Practice Section, Jordan Silk. Silk explained that, under the existing statute, parties could rely on the mailing date for timely filing and service of a notice of appeal only if they mailed the notice in a certain way: They could not rely on the mailing date if they sent the notice via a third-party commercial carrier—in spite of the fact that, under the Oregon Rules of Appellate Procedure, mailing by commercial carrier is an acceptable method of filing and serving *other* appellate documents. Audio Recording, House Committee on Judiciary, HB 2336, Feb 4, 2015, at 00:40:24 - 00:43:17 (testimony of Jordan Silk), https://olis.leg.state.or.us (accessed Dec 18, 2020). Silk warned that this state of affairs created a "trap for the unwary," because practitioners might think that a notice of appeal mailed by commercial carrier had been filed on the mailing date—a serious mistake, given that timely filing and service of a notice of appeal is jurisdictional. *Id.*

---

[11] The bill would have amended ORS 19.260(2)(a) in a similar way.

Silk suggested that enacting HB 2336 would solve the problem by allowing filing and service of a notice of appeal or other initiating document by third-party commercial carriers to the same extent that it is allowed for other appellate documents. *Id.* Doing so, according to Silk, "would avoid significant prejudice to litigants that result from a technical defect in the filing method" and "also avoid a malpractice trap for lawyers." *Id.*

Silk's testimony was followed by that of Senior Counsel for the State Court Administrator, Bruce Miller. Miller briefly testified that, although the Oregon Judicial Department had no problem with the concept behind the bill, it was concerned about an ambiguity in the phrase "mailed for delivery within three calendar days." Audio Recording, House Committee on Judiciary, HB 2336, Feb 4, 2015, at 00:43:17 - 00:46:18 (statement of Bruce Miller), https://olis. leg.state.or.us (accessed Dec 18, 2020). He explained:

> "Does it mean that the sender is guaranteeing three-day delivery? Is it an unspecified expectation of delivery—if I'm in Portland and mail first class down here I expect it to be here in three days or less? *** I think where the appellate section is going is that they're talking about a class of delivery and *** if the Committee is willing and the Bar is willing, we're happy to work with them to clean that up. *** We're working our way down that road to try to remove that ambiguity so that the bill does what it's supposed to do which is not to create any traps for the unwary."

*Id.* A committee member then asked Miller about why parties were not simply required to file electronically. Miller responded that the courts were moving in that direction and that "especially in the appellate courts, we are just about ready to make it mandatory for everyone." But, Miller added, there was a class of parties—"especially self-represented parties"—that "you have to allow *** to file a traditional paper petition." *Id.* (statements of Rep Mitch Greenlick and Senior Counsel Bruce Miller).

Thereafter, the bill was amended by replacing the phrase "mailed for delivery within three calendar days" with the wording that presently appears at subparagraph (1)(a)(B) of the statute—"mailed or dispatched via the United States

Postal Service or a commercial delivery service by a class of delivery calculated to achieve delivery within three calendar days." In that form and without further discussion, it was moved to the floor with a "do pass" recommendation by the House Committee on Judiciary and passed by consent in the House. The bill then moved to the Senate Committee on Judiciary.

There, Silk again introduced the bill. In his written testimony, he explained that it was "aimed at reducing possible confusion associated with filing and serving notices of appeal," which arose out of the fact that ORS 19.260 allowed parties to rely on the date of mailing when using registered or certified mail—but not commercial shippers—for timely filing and service of notices of appeal. Audio Recording, Senate Committee on Judiciary, HB 2336, Apr 30, 2015, at 00:29:30-00:32:35 (testimony of Jordan Silk), https://olis.leg. state.or.us (accessed Dec 18, 2020). He concluded by stating that the bill would "simplify and clarify the process for filing and serving initiating documents" and that it would "remove a potential pitfall that would result in the complete loss of appellate rights based on a technical defect." *Id.* The Senate committee voted, without further discussion, to move the bill to the floor, where it passed without objection. It was signed by the Governor and became effective on May 18, 2015.

The Court of Appeals majority concluded from that history that, in enacting HB 2336, the legislature had not intended to expand the statute's application to ordinary first-class mail. It characterized Silk's explanation of the bill as being directed at allowing its application to "commercial carriers that had become common alternatives offering expedited delivery," and, while acknowledging that the bill as enacted was not restricted to delivery by commercial carriers, it concluded that the categories of delivery that the legislature intended to add included only "expedited delivery services" and, thus, not ordinary first-class mail. 298 Or App 610-11.

Defendant draws a different message from the history of HB 2336's enactment. In defendant's view, the brief comments to the legislative committees by Silk and Miller

provide little insight into whether the legislators understood that first-class mail would fall within the bill's parameters, but they do show that the bill had two primary purposes: (1) to expand the methods by which a party could file a notice of appeal and (2) to remove "traps for the unwary" in filing such notices. Defendant asserts that those purposes are best served by reading the general "calculated to achieve delivery" standard broadly, in the way that ordinary citizens would understand it. That reading requires that the particular notice at issue be sent by a class of delivery that, under the circumstances in which it is being sent, is likely to be delivered within three calendar days.

The state counters, however, that the legislative history shows that the legislature's purposes in enacting HB 2336 were much narrower than the ones that defendant offers. The state highlights that Silk, the point person who offered an explanation of the bill during the legislative process, repeatedly described it as allowing the relation-back benefit for filing and serving notices of appeal to include dispatch by "third-party commercial carrier." The state then asserts that, insofar as commercial shippers exist primarily to provide expedited delivery, the bill's purpose apparently was a narrow one: to "enabl[e] appellants to file last-minute notices of appeal using *expedited* classes of delivery offered by USPS and commercial carriers" (emphasis added)—not to generally loosen the existing statute's requirements. The state also observes that Silk's comments were focused on the Oregon State Bar's organizational interests in assisting practitioners and that, consistently with that focus, Silk spoke about eliminating one particular "trap for the unwary"—the *malpractice* trap that resulted from precluding ORS 19.260's application to notices of appeal sent by third-person commercial carrier. In other words, the state argues, the legislative record contains no support for the generalized legislative purposes that defendant purports to find there—and, therefore, no justification for reading ORS 19.260(1)(a)(B) so as to give it broader application beyond the particular malpractice trap that Silk described.

Neither party's explanation of the legislative history is entirely satisfactory. On the one hand, we agree with the state that the testimony in the legislative record focuses

on the need to fix a specific situation—potential malpractice by an attorney who has used a commercial shipper in an attempt to expedite and achieve timely delivery of a notice of appeal—rather than on *generally* expanding the methods by which a party could file and serve a notice of appeal. On the other hand, the legislative history fails to conclusively establish that ORS 19.260(1)(a)(B) pertains only to "expedited" classes of delivery, given the absence of any mention of "expedited delivery" in any of the legislative proceedings or in the bill itself.

What the legislative history does show is that, after Silk introduced the original bill (which referred to mailing by the USPS or other delivery service "for delivery within three calendar days"), legislators heard from Miller that there were concerns about that phrase's lack of clarity and that the problem might be resolved by expressing what was required in terms of classes of delivery. But when the amended bill was offered, it did not identify *particular* classes of delivery or limit the classes to expedited delivery services. Instead, it provided a general standard for acceptable classes of delivery. It *may* be that the drafters of the amended bill had initially thought to limit the provision to so-called "expedited" classes, but the reality is that commercial carriers and the USPS have no consistent, comparable classes of delivery, "expedited" or not, whose characteristics are guaranteed to remain stable over time. In any event, the legislature's choice to phrase the provision in terms of a general standard necessarily reflects an intention that it apply to any class of delivery that meets the standard—and not only to so-called "expedited" classes. As we have observed before, statutes "ordinarily are drafted in order to address some known or identifiable problem, but the chosen solution may not always be narrowly confined to the precise problem. The legislature may and often does choose broader language that applies to a wider range of circumstances than the precise problem that triggered legislative attention." *South Beach Marina, Inc. v. Dept. of Rev.*, 301 Or 524, 531, 724 P2d 788 (1986).

Although Silk's primary focus was on removing a specific potential malpractice trap, Silk also described the bill, more generally, as clarifying the filing process and

preventing the loss of the right to appeal due to technical defects in the filing method. And in the House committee, the Judicial Department's representative, Miller, also spoke about "not creat[ing] any traps for the unwary." That testimony was *not* focused on the specific potential malpractice trap of using a commercial carrier to mail a notice of appeal but rather concerned ambiguity in the wording of the original bill. At Miller's suggestion and after an interchange that specifically addressed the continuing necessity of allowing self-represented parties to file documents in paper form once electronic filing was required for members of the Bar, the House committee agreed to allow the Judicial Department and the Bar's Appellate Practice Section to work out a clarifying amendment and ultimately adopted the amendment that they offered.

Given that legislative history, we cannot conclude that the legislature was concerned only about dismantling a particular malpractice trap. Although that testimony and the consequent revision of the bill may not establish that HB 2336 was enacted for the purpose of ensuring against all traps for the unwary, they suggest that the bill, as enacted, was drafted at least in part with ordinary litigants, including self-represented litigants, in mind. We can presume, then, that the legislature intended the resulting statute to clarify the filing process to prevent loss of appellate rights due to "technical defects," not just for legal practitioners but for self-represented litigants as well.

Finally, we address a species of "absurd results" argument that the state advances. The state contends that, if the statute's relation-back benefit is not limited to classes designed to achieve delivery of notices within three calendar days as a whole, in all circumstances, then its application becomes complex and unpredictable, a result that the legislature could not have reasonably intended. The Court of Appeals majority also made that point. It noted that the pre-2015 statute "achieved uniformity" by requiring use of specified mail services, so that "no one needed to worry about the individually varying circumstances of delivery." 298 Or App at 613. By comparison, the majority then explained, if the concurrence were correct that ORS 19.260(1)(A)(b) is concerned with delivery of a particular notice of appeal,

there would be no uniformity, which would be administratively inconvenient, confusing for litigants, and, ultimately, "irrational." *Id.*

We reject the premise that the consequences of viewing the statute from the standpoint of a particular litigant's dispatch of his or her notice of appeal would be so chaotic that the legislature could not have intended that meaning. First, although we cannot deny that reading the statute to permit appellate courts to look only at the class of delivery used to dispatch a notice of appeal would be more convenient for those courts, the legislative history does not suggest that the legislature's choices were driven by judicial administrative convenience. Second, the concern that litigants might be confused weighs in favor of the more natural reading of ORS 19.260(1)(a)(B) that the concurrence proposed. Indeed, this case offers an example of a self-represented litigant who read the statute in that way, concluding that the statute was directed at the circumstances of her particular notice of appeal. Reading the statute in that way is not irrational, and, as *amicus curiae* OTLA observes, having different outcomes that result from consistently applying the statute to different facts is no more confusing to litigants than having filing deadlines set by statutes or rules that may vary in individual cases according to the occurrence of weekends, holidays, snow days, and even electronic events.

   4.   *Application*

We already have concluded that, although other meanings are plausible, the most natural and compelling interpretation of the text of ORS 19.260(1)(a)(B) is that it refers to a class of delivery that is actively estimated or designed by the USPS or commercial delivery service to achieve delivery of the particular notice of appeal in question within three calendar days. Although the state has argued that the context surrounding the provision and an implied legislative preference for uniformity and administrative simplicity suggest a different meaning, we are not persuaded by those arguments. Neither are we persuaded that the legislative history supports a different meaning: If anything, the sparse legislative history supports the meaning above, in that it is the meaning that ordinary litigants

would give to the words.[12] We conclude that, when ORS 19.260(1)(a)(B) limits its application to notices of appeal mailed by a "class of delivery calculated to achieve delivery within three calendar days," it is referring to classes of delivery that are actively and purposefully designed or estimated—but not necessarily guaranteed—by the USPS or other delivery service to achieve delivery of the notice of appeal in question, in the circumstances, within three calendar days.

Applying that construction to the circumstances at issue here, we conclude that defendant mailed her notice of appeal by a class of delivery to which the relation-back benefit offered by ORS 19.260(1)(a)(B) would apply. The USPS publicizes its delivery time for first-class mail as "1-3 business days," suggesting that, by USPS intention and design, first-class mail should be delivered within that time period. In the circumstances in which defendant mailed her notice of appeal—on the Monday of a week without government holidays—that publicized delivery period of three business days was the same as three calendar days, meaning that the notice was mailed by a class of delivery designed and estimated by the USPS to achieve delivery of the notice within three calendar days.

B.   *Proof of Mailing Date*

As described above, the concurring judge in the Court of Appeals concluded that, although defendant had sent her notice of appeal by a class of delivery that satisfied the general standard set out in ORS 19.260(1)(a)(B), she had not satisfied the proof-of-mailing-date requirements in that subparagraph and in paragraph (1)(b). 298 Or App at 620-22 (Aoyagi, J., concurring). In her opinion, the concurring judge explained that, to take advantage of the relation-back benefit that the statute offered for persons mailing their notices of appeal, an appellant must "ha[ve] proof" of the date of mailing—a requirement set out in subparagraph (1)(a)(B)

---

[12] It also is the meaning that best protects ordinary litigants from losing their right of appeal based on nonobvious technicalities. We agree with the Court of Appeals concurrence that, given the devastating consequences of a failure to adhere to the statute's instructions, ORS 19.260(1) must be read "consistently with how average people in the real world will read it." 298 Or at 620 (Aoyagi, J., concurring).

that, in her view, cannot be satisfied by a postmark or PVI label on the mailing envelope. *Id.* at 621. The concurring judge reasoned that, because such marks and labels are applied *after* the envelope is surrendered for mailing and are never in the appellant's possession, an appellant does not have proof of the mailing date. Neither, in her estimation, can the requirement in paragraph (1)(b) that proof of the mailing date "be certified by the party filing the notice and filed thereafter with the court" be satisfied when the only proof is a postmark or PVI label on the mailing envelope—because "[a] party cannot certify and file something not in their possession." *Id.* The concurring judge thus concluded that, to satisfy the proof-of-mailing-date requirements in ORS 19.260(1), an appellant who files his or her notice by mail must obtain, certify, and file some sort of "receipt" from the USPS, in addition to the postmark or PVI label, as provided in ORAP 1.35(1)(b)(iii)(A).[13] *Id.* at 622. In this case, defendant had not obtained and filed an additional receipt but merely relied on a dated PVI label on the mailing envelope. The concurring judge concluded that, because defendant had not satisfied the proof requirements of ORS 19.260(1), under ORS 19.270(2)(b), the Court of Appeals lacked jurisdiction to hear defendant's appeal. *Id.*

The dissenting judges concluded, to the contrary, that the direction in subparagraph (1)(a)(B) that an appellant "ha[ve] proof" of the date of mailing does not require that he or she personally and physically possess the proof that he or she intends to rely on. Rather, a postmark or PVI label, although not in the sender's possession, is "ha[d]" by the sender in the sense that it continues in the sender's service. 298 Or App at 625 (Egan, C. J., dissenting). Similarly, the dissent added, the filing of proof of the date of mailing that ORS 19.260(1)(b) requires may be accomplished by "giving an unmarked envelope to a postal clerk for application

---

[13] ORAP 1.35(1)(b)(iii)(A) provides, in part:

"Acceptable proof from the U.S. Postal Service of the date of mailing must be a receipt for certified or registered mail or other class of service for delivery within three calendar days, with the mail number on the envelope or on the item mailed, and the date of mailing either stamped by the U.S. Postal Service on the receipt or shown by a U.S. Postal Service postage validated imprint on the envelope received by the Administrator or the U.S. Postal Service's online tracking system."

of a PVI, and fairly assuming that the court will place that envelope as a digital file in the court records upon receipt." *Id.* at 626. Finally, the dissent explained, to the extent that the requirement in subsection (1)(b) that an appellant certify "proof of the date of mailing" demands something different from the ordinary certificate of filing that, under ORAP 2.05, is required in any appeal (alone or in combination with the postmarked or PVI-labeled envelope), the provision appears to permit such certification to be filed *after* the notice of appeal is received by the appellate court. *Id.* at 626-28.

Defendant embraces the interpretation of the proof-of-mailing-date provisions advanced in the dissenting opinion in the Court of Appeals. Although the state does not overtly adopt the interpretation offered by the Court of Appeals concurrence, that interpretation is nevertheless one that must be considered.[14] The question, again, is one of legislative intent, to be answered by examining the statutory text and context and any helpful legislative history. *Gaines*, 346 Or at 171-73.

　　1.　*Text*

The statutory wording that is relevant to the proof-of-mailing-date issue appears in ORS 19.260(1)(a)(B) and (1)(b). Subparagraph (1)(a)(B) provides that the date of mailing a notice of appeal may count as the date of filing only if, among other things, "the party filing the notice *has proof* from the United States Postal Service or the commercial delivery service of the mailing or dispatch date."

We first address the issue of sufficient "proof" of the mailing date from the USPS or delivery service. The second sentence of ORS 19.260(1)(b) provides: "Any record of mailing or dispatch from the United States Postal Service or the commercial delivery service showing the date that the party initiated mailing or dispatch is sufficient proof of

---

[14] The state simply argues that, because a sender of first-class mail does not ordinarily obtain a record of mailing or dispatch from the USPS, the statute's proof of mailing date requirements are not "readily compatible" with ordinary first-class mail—lending further support to its view that the legislature did not intend that the relation-back benefit provided in the statute would apply to ordinary first-class mail.

the date of mailing or dispatch." Under that wording, the proof of the date of mailing that a person filing a notice of appeal must "ha[ve]," certify, and file is "sufficient" if it (1) is any record of mailing or dispatch; (2) was created by or came from the USPS or commercial delivery service; and (3) shows the date of mailing or dispatch. The sentence is unambiguous: "Any record" that meets those requirements is sufficient. Though the Court of Appeals concurrence argued that a party must obtain a separate document showing proof of mailing from the USPS or delivery service, the statute contains no requirement that proof be in the form of a separate document or receipt. We are unpersuaded that the phrase "any record of mailing or dispatch" is merely addressed to "the reality that different delivery services provide different forms of proof." 298 Or App at 622 (Aoyagi, J., concurring). In this case, defendant relied on a PVI label on the envelope that she used to send her notice of appeal to the court. That label was a record of mailing, created and affixed on the envelope by the USPS, and showed the date of mailing.

Although the PVI label constitutes "proof from the United States Postal Service" of the mailing date, the question nevertheless remains whether a person who sends mail to which such marks have been applied "has" that proof for purposes of ORS 19.260(1)(a)(B). On that point, the text appears to be ambiguous.

If, on the one hand, the legislature intended the word "has" in the phrase "has proof" only in the sense of actual physical possession, a party wishing to have the mailing date of their notice of appeal count as its filing date would have to obtain from the USPS and keep in their possession some additional, tangible documentation of the mailing date. On the other hand, if the legislature intended the word in a broader sense that includes an ability to call upon or use, a would-be appellant who did not obtain such additional documentation would still "ha[ve] proof" of the mailing date, insofar as he or she could point to and rely on the postmark or PVI label applied by the postal service to the envelope in which the notice was delivered to the appellate court. Both meanings are possible: While one common definition of "have" is "to hold in possession as property,"

another equally common definition is "to hold, keep, or retain esp. in one's use, service, regard, or affection or at one's disposal." *Webster's* at 1039.[15]

The ambiguity about what is meant by "ha[ving] proof" carries over to the requirement in ORS 19.260(1)(b) that "proof of the date of mailing *** be certified by the party filing the notice and filed thereafter." As noted, the Court of Appeals concurrence concluded that one cannot certify and file "proof of the date of mailing" that is not in one's physical possession. 298 Or App at 621 (Aoyagi, J., concurring). At least with respect to *filing* proof of the date of mailing, however, there is an argument to the contrary. When a notice of appeal is delivered to an appellate court in an envelope to which the date of mailing has been applied by postmark or PVI label, that envelope, or a physical or digital copy thereof, is added to the case file in accordance with the appellate court's usual practice. In such circumstances, while the appellant has never physically possessed the proof, he or she has caused it to be filed with the appellate court, along with the notice of appeal. That may qualify as filing proof of the mailing date: Certainly, nothing in the text of ORS 19.260(1)(b) excludes that possibility.

As to the requirement in ORS 19.260(1)(b) that "proof of the date of mailing" be *certified* by the person giving notice of appeal, it is unclear from the statute how that is to be accomplished, which gives rise to both that preliminary procedural question and the question whether the proof must be in the physical possession of the appellant before it is certified and filed. To "certify" something is generally thought to mean to attest to something or declare its truth—a meaning that is reflected in the "Certificate of Filing" form, set out in Appendix 2.05 of the Oregon Rules of Appellate Procedure (a signed statement by the appellant that he or she filed the notice of appeal to which the certificate is attached on a specified date by a specified method, *e.g.*, ordinary first-class mail, hand delivery, etc.). While attesting to a *fact*—for example, that the notice of appeal was

---

[15] The definition of "have" includes a further explanation—that the term is a "very general" one "indicating any condition of action or control, retaining, keeping, regarding, or experiencing as one's own." *Webster's* at 1039.

sent by first-class mail on a specified date—is common and understandable, it is difficult to imagine how one attests to *proof* of that fact. In the absence of any further instruction, it would not be unreasonable to interpret such a requirement as asking for certification of the underlying fact—particularly when there is an apparently separate requirement that proof of the fact be filed. Thus, one plausible meaning of the instruction in ORS 19.260(1)(b) that "proof of the date of mailing * * * must be certified by the party filing the notice and filed thereafter"[16] is that the person filing the notice of appeal must attach a signed statement certifying the date on which they mailed the notice and also file proof of the date of mailing. The question then would be whether causing proof of the mailing date to be filed with the court by, for example, sending the notice of appeal in such a way that a postmark or PVI label will be applied to the envelope in which it arrives, would be sufficient. As noted above, nothing in the text of the provision appears to exclude that possibility.

Another plausible meaning is that the person filing the notice of appeal must sign a statement attesting to the fact that such proof exists and to its form and then file that signed statement with the proof attached. However, no such form of certification is mentioned in ORAP 2.05, which sets out the necessary components of a notice of appeal. Given that fact, and the fact that ORS 19.260(1)(b) provides that "proof of the date of mailing * * * must be certified by the party filing the notice and filed *thereafter*," it would seem that such certification and filing of proof of the mailing date need not occur until *after* the notice of appeal is filed. Thus, an appellant who sent notice of appeal by ordinary first-class mail could satisfy the certification and filing requirements by obtaining a copy of the postmark or PVI label on the envelope in which the notice of appeal was mailed (from the court to which it was delivered) and certifying and filing that "proof of the date of mailing."

---

[16] The word "thereafter" in the quoted phrase appears to relate to the act of certifying, so that the person sending the notice files the proof after certifying it. As this court noted with respect to an earlier version of the statute that included the same phase, "this hardly need[s] saying." *Modoc Lumber Co. v. EBI Companies*, 295 Or 598, 602, 668 P2d 1225 (1983).

### 2.  *Context*

Turning to the statute's context, we first consider ORAP 1.35(1)(b), a provision of the rules of appellate procedure that corresponds to ORS 19.260(1). The Court of Appeals concurrence alluded to the present version of the rule, although the most directly relevant piece of that version comes from an amendment to the rule, which, because it was adopted *after* ORS 19.260(1)(a)(B) and (1)(b) were enacted, cannot properly be considered context for understanding the legislative intentions underpinning those provisions. However, given that the rule appears to be directed at either replicating or illuminating the meaning of ORS 19.260(1)(a)(B) and (1)(b) and that at least some of it preceded the enactment of those provisions, we will consider whether it has *anything* to offer regarding the legislature's intent.

Rule 1.35(1)(b)(iii)(A) provides:

"A person may deliver an initiating document for filing via the U.S. Postal Service, and delivery is complete on the date of mailing if mailed or dispatched for delivery in accordance with ORS 19.260(1)(a). If the Administrator receives the initiating document within the time prescribed by law, the person need not submit proof of the date of mailing. If the Administrator does not receive the document within the time prescribed [by] law and the person must rely on the date of mailing as the date of delivery, the person must file with the Administrator *acceptable proof* from the U.S. Postal Service of the date of mailing. *Acceptable proof from the U.S. Postal Service of the date of mailing must be a receipt for certified or registered mail or other class of service for delivery within three calendar days, with the mail number on the envelope or on the item being mailed, and the date of mailing either stamped by the U.S. Postal Service on the receipt or shown by a U.S. Postal Service postage validated imprint on the envelope received by the Administrator or the U.S. Postal Service's online tracking system.*"

(Emphases added.) The rule immediately following, ORAP 1.35(1)(b)(iii)(B), provides in similar terms for delivery of an initiating document *by commercial delivery service* "in accordance with ORS 19.260(1)(a) for review," but does not refer to or define "acceptable" proof of the date of mailing.

The concurrence cited ORAP 1.35(1)(b)(iii)(A) in support of its assertion that, in enacting ORS 19.260(1)(a)(B) and (1)(b), the legislature intended that persons seeking to use the mailing date of a notice of appeal as the filing date "obtain" (and thus have in their physical possession) proof of the mailing date from the USPS, and then certify and file that proof with the appellate court. In a parenthetical, the concurrence noted that the rule provides that "acceptable proof" from the USPS must be "a receipt." 298 Or at 622 (Aoyagi, J., concurring).

But whether the appellate rule can function as a stand-in for the statutory provisions depends on whether the rule reflects or conflicts with the requirements of the statute. As noted, ORS 19.260(1)(b) provides that, for purposes of the proof-of-mailing-date requirements, "[a]ny record of mailing or dispatch from the United States Postal Service or the commercial delivery service showing the date that the party initiated mailing or dispatch is sufficient proof of the date of mailing or dispatch." In the absence of any contextual or historical evidence to the contrary, we take that broad pronouncement at face value. And taken at face value, it cannot be squared with the appellate rule's declaration that a specific kind of proof—a "receipt for certified or registered mail or other class of service for delivery within three calendar days" from the USPS *and* a dated postmark or PVI label on the envelope—is required. In such circumstances, the statutory provision governs, and the rule must simply yield. *Harding*, 347 Or at 372-73.

We turn to the rule as it existed before the statutory provisions at issue were enacted to determine whether anything in that earlier version might support a conclusion that the legislature intended a more limited meaning than the "any record" wording seems to convey. As it turns out, ORAP 1.35(1)(c) (2013) provided for relation-back filing of notices of appeal by mail in much the same terms that present-day ORAP 1.35(1)(b)(iii)(A) does. The only substantive difference is in the earlier rule's definition of "acceptable proof," which, rather than providing that acceptable proof "must be a receipt for certified or registered mail or other class of delivery within three days, [etc.]," referred only to "a receipt for certified or registered mail, [etc.]." That was consistent

with the statutory requirements at the time, because ORS 19.260(1) provided for relation back to the mailing date only for notices of appeal sent by certified or registered mail. Thus, the appellate rule's definition of "acceptable proof" apparently was designed with those specific mailing services in mind. Given that fact, there is no reason to believe that, when the 2015 Legislative Assembly added an entirely new category of delivery services, in addition to certified and registered mail, to which the relation-back benefit set out in ORS 19.260(1) would apply, it would have intended to impose the same proof requirement (a "receipt" in addition to a postmarked or PVI-labeled envelope) that ORAP 1.35(1)(c) (2013) imposed for certified or registered mail. Thus, nothing in the pre-2015 iteration of ORAP 1.35 suggests a legislative intent to shade the apparent meaning of the "any record of mailing or dispatch" wording in ORS 19.260(1)(b) or otherwise limit the kinds of proof that a person mailing notice of appeal may rely on to obtain the statute's relation-back benefit.

One final piece of context that we consider is *Modoc Lumber Co. v. EBI Companies*, 295 Or 598, 668 P2d 1225 (1983), in which this court attempted to construe the earliest version of ORS 19.260—then codified at ORS 19.028— which allowed the filing date to relate back to the mailing date if notice of appeal was sent by certified or registered mail and the appellant "ha[d] proof from the post office of [the] mailing date." The notice of appeal in question had been mailed to the Court of Appeals on the last day of the appeals period, in an envelope that had been date-stamped by a law firm's USPS-authorized postage meter and to which a certified mail form that had *not* been date-stamped by the post office had been affixed. The Court of Appeals dismissed the appeal on the ground that the undated certified mail form did not constitute "proof from the post office of [the] mailing date," and it refused to reinstate the appeal when the appellant later submitted an affidavit from the local postmaster stating that, based on the date of delivery, the notice must have been mailed on the date shown on the postmark.

On review of the dismissal, this court accepted the would-be appellant's argument that dismissal for insufficient proof of the mailing date was inappropriate when the

permissible methods of proof were unclear. The court noted that the statute did not specify any particular form of "proof from the post office" and that the statute could not be presumed to require use of the particular forms provided by the post office for registered or certified mail at the time of the statute's enactment "without vitiating the statute if post office practice or terminology were to change." *Modoc Lumber Co.*, 295 Or at 601-02. The court then noted a further ambiguity that arose with respect to how the requirement that the appellant "ha[ve] proof" of the mailing date related to an additional requirement, not expressly made a condition of valid filing by mail, that "[p]roof of mailing shall be certified by the appellant and filed thereafter with the court to which the appeal is taken." *Id.* at 602. In the end, the court concluded that the proof requirement was sufficiently uncertain that it should be clarified by rule, and that, in the absence of such clarification, the appellant's appeal should be reinstated (and, by implication, that courts should give appellants the benefit of any doubt as to what proof is required until such time as the proof requirement was clarified by rule). *Id.* at 602-03.

    *Modoc Lumber Co.* was decided before the amendments to ORS 19.260 at issue here were enacted by the legislature, and it therefore provides no direct clues as to how those amendments should be read. What the case does show, however, is that, when the predecessor statute failed to clearly state what proof was required, in provisions that are nearly identical to those at issue here (that an appellant must "ha[ve] proof from the post office of [the] mailing date" and that "[p]roof of mailing shall be certified by the appellant and filed thereafter"), the appellant was not forced to bear the consequences of the statute's lack of clarity: The court declined to read in requirements for proof that had not been expressly specified.

    3.  *Legislative history*

    The version of ORS 19.260(1) that existed before 2015 contained requirements that the person sending a notice of appeal by registered or certified mail "ha[ve] proof" of the date of mailing and that and that proof of the mailing date must be "certified" and "filed thereafter." As noted

above, 367 Or at 408, HB 2336 (2015) as it was originally introduced added a new category—"mailed for delivery within three calendar days" via USPS or a commercial delivery service—and imposed those same proof requirements on the new category.

It was only later, when the bill was amended to refer to "class[es] of delivery," in response to concerns about clarity expressed by a Judicial Department representative, that the proof requirement was expanded to contain the statement: "Any record of mailing or dispatch from the United States Postal Service or the commercial delivery service showing the date that the party initiated mailing or dispatch is sufficient proof of the date of mailing or dispatch." That statement was not mentioned in any of the legislative committee meetings about HB 2336. Neither were the proof requirements that attached to the new category ever mentioned.

In short, nothing in the legislative history of HB 2336 points to a particular legislative intention with respect to those requirements. What can be gleaned from the legislative history is what we already have mentioned—that the legislature intended to clarify the process for filing notices of appeal and prevent loss of appellate rights due to "technical defects," not just for lawyers but also for ordinary persons, including self-represented litigants.

4.  *Application*

When considering the possible meanings that the legislature intended with respect to the proof requirements in ORS 19.260(1)(a)B) and (1)(b), it is difficult to get around the broad and unambiguous statement in paragraph (1)(b) that "[a]ny record of mailing or dispatch from the United States Postal Service or the commercial delivery service showing the date that the party initiated mailing or dispatch is sufficient proof of the date of mailing or dispatch." A postmark or PVI label evidently fits the bill. Thus, the crux of the proof issue is whether, within the meaning of ORS 19.260(1)(a)(B), the person filing notice by first-class mail can "ha[ve] proof" of the date of mailing and can satisfy the requirement in ORS 19.260(1)(b) that proof of the mailing date "be certified * * * and filed thereafter," either by (1) mailing the notice of appeal by first-class mail (thereby causing

it to be delivered to the court in a date-marked envelope that is retained in the court's record), coupled with filing the ordinary certificate attesting to the method of delivery and date of dispatch, or (2) mailing the notice of appeal by first-class mail and thereafter obtaining and then filing a copy of the date-marked envelope along with a certificate attesting to that method of proof. We agree with defendant, based on the statute's wording, that the answer to that question is yes—either of those alternatives is acceptable—and that neither the statute's context nor legislative history precludes that meaning.

In this case, defendant met the proof requirement. She certified that she had filed her notice of appeal by using the "United States Postal Service, ordinary first class mail," and she relied on the clearly dated PVI label on the mailing envelope received by the court as proof of the date that she had mailed her notice of appeal.

Should the legislature decide that something more should be required to obtain the relation-back benefit of ORS 19.260(1)—for example, that an appellant must physically possess a document showing proof of mailing a notice of appeal, apart from having proof by virtue of a PVI label or postmark with a mailing date on the envelope that contained the notice—then it is free to enact amendments that clarify that intention. But until that happens, an appellant will satisfy the proof requirements by causing his or her notice of appeal to be delivered to the appellate court in a postmarked or PVI-labeled envelope and filing an ordinary certificate of filing providing the date and the method of filing.

## IV.   CONCLUSION

For the reasons set out above, we conclude that defendant satisfied both the "class of delivery" requirement and the proof-of-mailing-date requirements in ORS 19.260(1). It follows that defendant's notice of appeal is deemed filed on the date that she mailed it, that the notice was timely filed, and that the appeal was erroneously dismissed.

The decision and order of dismissal of the Court of Appeals are reversed. The case is remanded to the Court of Appeals for further proceedings.